*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 05a0360p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

In re:  DOW CORNING CORP.,

               *Debtor.*

_____

BEAR STEARNS GOVERNMENT SECURITIES, INC.,
et al.,

               *Appellants,*

    *v.*

DOW CORNING CORP., et al.,

               *Appellees.*

No. 04-1916

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 01-71843—Denise Page Hood, District Judge.

Argued:  July 27, 2005

Decided and Filed:  August 22, 2005

Before:  MOORE and COLE, Circuit Judges; and WISEMAN, District Judge.[*]

_____

## COUNSEL

**ARGUED:**  Abraham Singer, PEPPER HAMILTON, Detroit, Michigan, for Appellants.  David L. Ellerbe, NELIGAN, TARPLEY, STRICKLIN, ANDREWS & FOLEY, Dallas, Texas, for Appellees.  **ON BRIEF:**  Abraham Singer, Mary K. Deon, PEPPER HAMILTON, Detroit, Michigan, for Appellants.  David L. Ellerbe, NELIGAN, TARPLEY, STRICKLIN, ANDREWS & FOLEY, Dallas, Texas, for Appellees.

_____

[*]The Honorable Thomas A. Wiseman, Jr., United States District Judge for the Middle District of Tennessee, sitting by designation.

---

**OPINION**

---

R. GUY COLE, JR., Circuit Judge.  Twenty-seven Texas plaintiffs seeking recovery for injuries resulting from allegedly faulty breast implants engaged in settlement negotiations with the implants' manufacturer, Dow Corning Corp., a Michigan company.  After the discussions reached an impasse over terms covering the consequences in the event settlement payments were not timely, Dow Corning suggested a clause requiring payments of $100 per day to each plaintiff for any time during which settlement payments were late.  The plaintiffs agreed to this clause, and entered into the settlement agreement, later selling their right to settlement payments to Appellant Bear Stearns. When Dow Corning declared bankruptcy and began to miss payments under the settlement agreement, Bear Stearns attempted to enforce the clause via a bankruptcy claim.  The district court, on Dow Corning's motion for summary judgment, held that the clause was a penalty unenforceable under Texas law, and also found that a condition precedent to the contractual provision of liquidated damages had not been met.  Bear Stearns now appeals, arguing that the condition precedent was in fact met, and that Dow Corning should be estopped from asserting that the clause is a penalty. Because the clause is a penalty unenforceable under Texas law, and because Texas courts preclude parties from being estopped from asserting an illegality defense, we **AFFIRM** the decision below.

**I.**

Following revelations that many of Dow Corning's silicone-based breast implants were faulty, numerous suits were filed against Defendant-Appellee Dow Corning Corp. ("Dow Corning"). Twenty-seven Texas residents ("Plaintiffs") filed suit in Texas state court in 1994, alleging various claims against Dow Corning.  Dow Corning found itself "under significant pressure" to settle these twenty-seven cases, especially since any findings of fact made in these cases (the "Texas cases") could have significant adverse effects upon Dow Corning's position in a related multi-district case and related global settlement discussions then pending in federal court in Alabama.  Dow Corning was also motivated to settle because of its view that the Texas cases were filed in a "plaintiff-friendly" forum.  Dow Corning thus hired Ken Feinberg, a noted expert in settlement practice, to engage in settlement negotiations with the Plaintiffs.

But for one sticking point, the negotiations went smoothly.  Both parties agreed that Texas law would control the settlement agreement.  Dow Corning would pay the Plaintiffs a total of $17 million over the course of several years, in a series of seven installments.  This payment would be secured by an "Agreed Judgment" filed in Texas court, though the judgment would be enforced only if Dow Corning failed to make a timely settlement payment.  Plaintiffs' counsel would be responsible for determining what portion of the $17 million each individual Plaintiff would receive. Further, if Dow Corning ever were late on an installment payment, the entire settlement amount would come due.  However, near the end of negotiations, Plaintiffs' counsel insisted on a clause (the "no credit clause") which provided that if Dow Corning ever failed to make a timely payment, it would not receive credit against the judgment for previously made payments.  For example, under this clause, if Dow Corning failed to make a required final payment of $200,000 to a particular Plaintiff, that Plaintiff would be able to enforce the "agreed judgment" against Dow Corning for the full settlement amount of $1,400,000, rather than merely for the $200,000 portion of the judgment remaining unpaid.  This would occur despite the fact that the Plaintiff in this example would already have received $1,200,000 of the $1,400,000 due.  Plaintiffs' counsel justified this clause by stating that it would provide a significant incentive for Dow Corning to pay scheduled payments on time.

Not wishing to place itself in a position where it could potentially be required to "double-pay" a significant portion of the settlement, Dow Corning steadfastly objected to the no credit

clause. However, Dow Corning by its own admission at this time felt "a tremendous sense of urgency to finalize the settlement." Accordingly, Dow Corning's attorneys proposed replacing the no credit clause in each Plaintiff's agreement with language requiring a "penalty" of $100 to be paid for each day that Dow Corning was late in paying a particular Plaintiff. After insisting that all uses of "penalty" be changed to "liquidated damages," and after making some insignificant stylistic changes, Plaintiffs' attorneys agreed to insert the following language proposed by Dow Corning:

> In the event that [Dow Corning] fails to make any payment in accordance with [the] Agreement, and Plaintiff must seek enforcement of the judgment to obtain the amounts due, then [Dow Corning] will pay to Plaintiff, as liquidated damages, the sum of One Hundred Dollars ($100.00) per day for each day that payment is not made from the date payment was due until the date Plaintiff receives the full amount due and owing under the terms of this agreement. These liquidated damages shall be in addition to the assessment of costs and interest as provided in the agreed judgment and the acceleration of installment payments as provided in [] the Agreement.

The Plaintiffs' attorneys noted at that time that if the new provision provided for a "penalty," the provision would not be enforceable under Texas law.

The parties agreed on this language, and inserted the clause into each settlement agreement. Dow Corning paid the first installment payment, totalling $4 million, on December 1, 1994. However, on May 15, 1995, Dow Corning filed for bankruptcy in the Eastern District of Michigan, and thereafter failed to make any further payments under the settlement agreement — the second installment having been due on July 1, 1995. All of the Plaintiffs timely filed claims in bankruptcy court for the amounts due under the settlement agreement. In February 1997, while the bankruptcy case was pending, the Plaintiffs all sold their claims to Appellant Bear Stearns Investment Products, Inc., and related entities (collectively, "Bear Stearns"). Bear Stearns was then substituted for the Plaintiffs in the bankruptcy case.

Years later, a reorganization plan was approved for Dow Corning. The plan included payment to Bear Stearns of the full remaining settlement amount of $13 million, plus post-petition interest of $9.6 million.[1] During bankruptcy proceedings, Bear Stearns also claimed liquidated damages in the amount of $8.75 million pursuant to the settlement agreement. Dow Corning filed an objection to this portion of Bear Stearns's claim, and the bankruptcy court, without any written findings, sustained the objection and disallowed the liquidated damages portion of the claim. Bear Stearns appealed to the district court. Since Dow Corning was fully solvent and had agreed to pay whatever the district court determined was due, the court allowed the confirmed plan to become effective while the liquidated damages appeal was pending. As a result, just after the plan's effective date, on June 1, 2004, Bear Stearns was paid the $22.6 million both parties agreed was due under the plan. Meanwhile, Bear Stearns and Dow Corning each had filed a motion for summary judgment in district court with regard to the additional liquidated damages. The district court denied Bear Stearns's motion, and granted summary judgment to Dow Corning, finding that the liquidated damages clause was a penalty unenforceable under Texas law, and that even if it were not, a condition precedent to any award of liquidated damages had not been met. The district court then certified the grant of summary judgment as final, under Fed. R. Civ. P. 54(b), since the ruling conclusively resolved all claims with regard to the liquidated damages clause. This timely appeal followed.

---

[1] Bear Stearns is also an appellant in another Dow Corning appeal currently pending before this Court. All parties agree that the legal issues presented by the two appeals are effectively unrelated and that Dow Corning will pay additional post-petition interest on all money due under the settlement agreement if such additional interest is awarded to Bear Stearns as a result of the other appeal.

## II.

### A. Choice of Law and Standard of Review

Both parties agree that, pursuant to the settlement agreement's choice-of-law provision, the construction and enforcement of terms of the settlement agreement is governed by the laws of Texas. Though there is a circuit split over what choice-of-law provisions a federal court exercising bankruptcy jurisdiction should apply, *compare, e.g.*, *In re Vortex Fishing Sys., Inc.*, 277 F.3d 1057, 1069 (9th Cir. 2002) (requiring use of federal choice-of-law principles) *with, e.g.*, *In re Gaston & Snow*, 243 F.3d 599, 604-07 (2d Cir. 2001) (describing this split in great detail and requiring use of the forum state's choice-of-law principles); *see also, e.g.*, *In re S.W. Equip. Rental Inc.*, No. CIV 1-90-62, 1992 WL 684872, at *9 n.48 (E.D. Tenn Jul. 9, 1992), both Michigan choice-of-law rules and general equitable choice-of-law policies support enforcing parties' agreed-upon choice-of-law clauses absent any strong public policy concerns to the contrary. *See, e.g.*, *Mills Pride, Inc. v. Cont'l Ins. Co.*, 300 F.3d 701, 705 (6th Cir. 2002) ("Michigan choice of law rules . . . require a court to balance the expectations of the parties to a contract with the interests of the states involved to determine which state's law to apply." (citations omitted)); Restatement (Second) of Conflicts of Law § 302 (1971) (suggesting similar principles in the non-state-specific context). As we are aware of no public policy disfavoring application of Texas law in the instant case, we agree with the parties and the district court, and apply Texas law in determining the enforceability of the subject contract terms.

Since the instant claims were brought in bankruptcy court pursuant to federal bankruptcy jurisdiction, federal procedural rules apply. Therefore, we review the district court's legal conclusions *de novo*. *In re Batie*, 995 F.2d 85, 88 (6th Cir. 1993); *In re Dow Corning Corp.*, 280 F.3d 648, 656 (6th Cir. 2002). In applying state law, we anticipate how the relevant state's highest court would rule in the case and are bound by controlling decisions of that court. *Allstate Ins. Co. v. Thrifty Rent-A-Car Sys., Inc.*, 249 F.3d 450, 454 (6th Cir. 2001). Intermediate state appellate courts' decisions are also viewed as persuasive unless it is shown that the state's highest court would decide the issue differently. *Id.*

Under federal procedural law, in deciding a motion for summary judgment in a bankruptcy proceeding, this Court must determine if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed R. Civ P. 56(c); *see also* Fed. R. Bankr. P. 7056 ("Rule 56 F.R.Civ.P. applies in adversary proceedings."). As usual, we view the evidence in the light most favorable to the non-moving party. *See, e.g.*, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-88 (1986). However, since the instant appeal is from both the grant of summary judgment to Dow Corning *and* the denial of summary judgment to Bear Stearns, it is appropriate to consider the evidence in the light most favorable to each party.

Finally, under Texas law, the determination of whether a contract term is properly a liquidated damages provision or instead an unenforceable penalty is purely a question of law. *See, e.g.*, *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 664 (Tex. 2005) ("Whether a contract term is a liquidated damages provision is a question of law for the court to decide."); *S. Union Co. v. CSG Sys., Inc.*, No. 03-04-00172-CV, 2005 WL 171349, at *4 (Tex. Ct. App. Jan. 27, 2005) ("Whether the liquidated damages provision is enforceable is a question of law."). "Sometimes, however, factual issues must be resolved before the legal question can be decided. For example, to show that a liquidated damages provision is unreasonable because the actual damages incurred were much less than the amount contracted for, a defendant may be required to prove what the actual damages were." *Phillips v. Phillips*, 820 S.W.2d 785, 788 (Tex. 1991).

**B. Liquidated Damages**

Bear Stearns first argues that the $100 per day provision is a valid liquidated damages clause. Under Texas law, a "liquidated damages" term is treated as a penalty, unenforceable for reasons of public policy, except when all three of the following conditions are met:

> First, [(1)] the anticipated damages for a breach must be difficult or impossible to estimate. Also, [(2)] the amount of liquidated damages must be a reasonable forecast of the amount necessary to render just compensation. In addition, [(3)] 'liquidated damages must not be disproportionate to actual damages,' as measured at the time of the breach. Thus, if the liquidated damages are disproportionate to the actual damages, the clause will not be enforced and recovery will be limited to the actual damages proven.

*Thanksgiving Tower Partners v. Anros Thanksgiving Partners*, 64 F.3d 227, 232 (5th Cir. 1995) (footnotes omitted) (quoting *Baker v. Int'l Record Syndicate*, 812 S.W.2d 53, 55 (Tex. Ct. App. 1991)). Further, "[t]he party seeking to prevent enforcement bears the burden of proof on these [three] issues." *Id.*; *see also Fluid Concepts, Inc. v. DA Apartments Ltd. P'ship*, 159 S.W.3d 226, 231 (Tex. Ct. App. 2005) (concluding that trial court had erred in granting summary judgment to defendant where defendant had presented no evidence supporting denial of liquidated damages, despite plaintiff's failure to provide any proof in support of such damages). Accordingly, to defeat Bear Stearns's motion for summary judgment and to prevail on its own summary judgment motion, Dow Corning bore the burden of proving that any one of the preceding conditions had not been met. Finally, Texas law grants strong deference to enforcement of contract terms, including liquidated damages terms, shown to be mutually bargained for by equally competent parties. *S. Union*, 2005 WL 171349, at *5 (citing *Shel-al Corp. v. Am. Nat'l Ins. Co.*, 492 F.2d 87, 94 (5th Cir. 1974)). The district court ruled against Bear Stearns, finding that none of the prongs of the liquidated damages test were met.

*1. Were Future Damages Stemming From Breach Difficult to Estimate?*

Bear Stearns first argues that the district court erred when it determined that all liquidated damages clauses in contracts for the payment of money are unenforceable penalties. The district court concluded that since interest can be paid to offset any delay in receiving money due under a contract, damages for such contracts will always be easy to estimate. For this proposition, the district court relied significantly on language from *Langever v. R.G. Smith & Co.*, 278 S.W. 178, 179 (Tex. Ct. App. 1925):

> In determining the intention of the parties to such stipulation, certain well-recognized rules of construction enter into the consideration, an important one of which is, the certainty or uncertainty of the actual damages which a breach will occasion, and the ease or difficulty of ascertaining or proving such damages; hence, in a case of a contract for the payment of money simply, a stipulation to pay a fixed sum, in default of performance, will be regarded as an agreement for a penalty and not as a covenant for liquidated damages--the reason for this rule being that, for the nonpayment of money, the law awards damages measured by interest, and hence there is no difficulty in ascertaining the damages in such a case.

*Id.* While this passage from *Langever*, taken alone, is supportive of the district court's holding, the district court ignored the fact that this was only one factor to be considered under Texas law. The plaintiff in *Langever* alleged that, due to non-payment on the contract at issue, he had lost significant profits (as, presumably, he was intending to reinvest the money once received), and that the liquidated damages term had been an attempt to estimate the result of his not having been paid.

Despite the dicta cited by the district court in the instant case, the *Langever* court went on to state first that, "Where it is certain that damages will flow, and where it is certain they cannot be accurately measured, or where it appears their ascertainment, if possible, will be difficult, the best reasons exist for respecting the agreement of the parties in advance upon a sum mutually satisfactory." *Id*. The *Langever* court then granted enforcement of the clause, despite its dicta, noting that "Any effort to establish the actual damages for a breach of a contract such as the one under consideration here would be attended with such unusual considerations and surrounded with such uncertainty and difficulties as to take the case out of the usual class of cases of mere default in the payment of money, and thus to afford fair grounds for sustaining an agreement for liquidated damages." *Id*.

Accordingly, *Langever* merely stands for Texas's consistent law that liquidated damages clauses in contracts for payment of money are unenforceable *except* when damages are particularly difficult to estimate. Bear Stearns argues that the liquidated damages clauses in the instant case were intended to compensate for difficulties encountered by the Plaintiffs were they not to receive the settlement monies they were expecting to receive. According to Plaintiffs' attorneys, such damages specifically included losses sustained by the Plaintiffs' inabilities to meet obligations they had made based on the promise of Dow Corning to make payments under the settlement agreement. Bear Stearns alleges that such difficulties would have been particularly difficult to estimate here, because Plaintiffs' difficulties included damages beyond the usual "lost investment opportunities" and inabilities to make house and car payments. Rather, Bear Stearns asserts that the clause was also intended to compensate for difficulties resulting from a failure to be able to meet future obligations incurred in expectation of receiving settlement payments, including obligations such as future (and inherently unpredictable) medical services required due to illness caused by the allegedly faulty implants, and also Plaintiffs' "decisions to discontinue working if they could afford to do so."

On this prong, Dow Corning raises two arguments in addition to that relied upon by the district court. First, Dow Corning argues that the items Bear Stearns claims would be "damages" following non-payment are actually damages that the initial settlement itself had contemplated, and thus the liquidated damages clause effectively would double-pay for these amounts. Bear Stearns responds by noting that the liquidated damages provision was *not* intended to cover medical expenses resulting from the faulty implants, but rather to compensate for additional costs associated with receiving late payments from Dow Corning. We agree with Bear Stearns that this conclusion is reasonable in light of *Langever*, which specifically allowed liquidated damages in a situation in which future damages resulting from non-payment were likely to be more than the time-value of monies owed under the original contract.

Dow Corning's second argument is that the parties simply were not anticipating any additional damages from non-payment, difficult to calculate or otherwise. Dow Corning cites to the fact that the liquidated damages clause was initially proposed as a "penalty," and that none of the attorneys in the case from either side could remember any discussions regarding difficult-to-calculate damages. In contrast, Bear Stearns notes that at least one of the Plaintiffs' attorneys stated specifically that "the liquidated damages provision was to recognize that [Plaintiffs] would have losses sustained by their inability to meet the obligations that they had made based on the promise of Dow Corning to make payments under this Agreement." These duelling assertions, however, go to the question of whether the provision was *actually* a just forecast of any damages, and not to whether such damages, if contemplated, would be difficult to calculate. Dow Corning does not argue that the damages resulting from non-payment of settlement monies, including inability to meet future medical and other obligations, would be easy to calculate. Obviously, the twenty-seven Plaintiffs would each face differing levels of such damages, and in this particular case, no party has argued that the Plaintiffs' medical or other obligations were uniform or predictable. Accordingly, Dow Corning has failed to show that the anticipated damages would not be difficult to estimate.

*2. Was the Liquidated Damages Clause a Reasonable Forecast of Just Compensation for Such Damages?*

The district court also gave two reasons for concluding that Bear Stearns ought to lose on prong two, regarding whether the amount of liquidated damages was a reasonable forecast of the amount necessary to render just compensation. Unsurprisingly, Dow Corning agrees with both. First, the district court found that the $100 per day simply was not a forecast of compensation for any damages, but rather was initially intended as a penalty. Second, the district court concluded that even if the Plaintiffs' attorneys had intended this clause as compensation for damages, there was no evidence that the likely amount of such damages was ever estimated at all or that it was compared with $100 per day, nor was any evidence provided that any negotiations over what amount would be reasonable compensation had ever occurred. The district court concluded that the clause thus was not a "reasonable forecast of just compensation."

Bear Stearns argues that the burden was on Dow Corning to prove that the clause was not a reasonable forecast, and that Dow Corning simply has not presented any evidence that the clause was not a reasonable forecast of damages. However, this argument both discounts the evidence Dow Corning has presented and overstates Dow Corning's burden. Dow Corning has presented evidence that the parties did not discuss potential uncertain damages resulting from breach, and has also presented evidence that the clause was initially proposed as a penalty untied to any potential damages.

Bear Stearns argues that the district court unfairly shifted the burden of proof to Bear Stearns. However, such a shifting was not improper in light of evidence presented by Dow Corning that is probative of a lack of both intent to provide just compensation and the existence of any consideration of any estimates of what just compensation would be. Bear Stearns's only statement to counter Dow Corning's evidence of a lack of connection between the clause and any estimate of damages is that "[g]iven the large number of individual Plaintiffs and the difficulty in estimating each Plaintiff's actual damages in the event of a breach by Dow, the $100 per day figure was a reasonable estimate of those damages." This argument may reasonably rebut one of Dow Corning's other arguments, that the damages were not reasonably predictive of damages potentially or actually incurred by any one specific Plaintiff. Regardless, however, the fact that there are numerous Plaintiffs or that each Plaintiff's damages were uncertain does not logically imply that $100 per day *was* a reasonable estimate of damages.

Bear Stearns further argues that "[h]aving proposed the $100 per day figure, Dow clearly believed it was reasonable at the time." However, such an inference cannot be made. When Dow Corning proposed the $100 figure, the uncontradicted evidence shows that it intended the figure as a penalty, and *not* as a reasonable estimation of some set of damages. Bear Stearns cites no evidence tying the $100 figure to any of the types of damages it claims Plaintiffs were estimated to face post-breach, while Dow Corning cites evidence probative of an absence of a concern for whether $100 was just compensation. For this reason alone, Bear Stearns's arguments fail. *See, e.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (requiring a party defending against a motion for summary judgment to provide more than a "scintilla" of evidence to support the conclusion that there is a genuine issue of material fact for trial).

The district court also held that the $100 per day provision was not a reasonable estimate of just compensation for the anticipated damages because such liquidated damages would constitute double recovery for damages already compensated by the base settlement payments. *See, e.g.*, *Eberts v. Businesspeople Personnel Servs., Inc.*, 620 S.W.2d 861 (Tex. Ct. App. 1981) (disallowing double recovery via liquidated damages); *Robert G. Beneke & Co., Inc. v. Cole*, 550 S.W.2d 321 (Tex. Ct. App. 1977) (same). However, Bear Stearns properly notes that the damages for which it is claiming liquidated damages are *not* damages contemplated by the underlying contract, since the

damages at issue here are those resulting from a breach of the settlement agreement itself (*e.g.* difficulties or other costs resulting from inability to pay medical bills or other bills which Plaintiffs had incurred relying on the availability of settlement money), and *not* those for which the settlement payments are supposed to compensate the Plaintiffs (*e.g.* expenses resulting directly from potentially faulty implants). Accordingly, the district court should not have concluded that enforcement of the liquidated damages clause would constitute double recovery. Nonetheless, because Dow Corning provided evidence that the provisions were not actually reasonable estimations of any anticipated damages from breach, the second prong of the liquidated damages test, and thus the result of the entire test, was properly resolved in Dow Corning's favor.

*3. Are the Liquidated Damages Disproportionate to the Actual Damages Incurred by Plaintiffs?*

Because Dow Corning has met its burden of proving that the clause was not a reasonable estimation of any anticipated damages, the entire three-part test must be resolved in its favor. *See, e.g.*, *Baker*, 812 S.W.2d at 55. Therefore, we need not determine whether the "liquidated damages" under the clause would be disproportionate to any actual damages incurred by Plaintiffs.

**C. Quasi-Estoppel and Unenforceable Liquidated Damages Clauses**

Under Texas law, the illegality of a liquidated damages clause is an affirmative defense that must be asserted by a defendant when it is not clear from the face of the agreement that the clause is illegal. *See, e.g.*, *Phillips v. Phillips*, 820 S.W.2d 785, 789-90 (Tex. 1991). Bear Stearns argues that the doctrine of quasi-estoppel should prevent Dow Corning from being able to assert this affirmative defense, and therefore that the liquidated damages clause should be enforced. Quasi-estoppel is appropriate where "it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit." *Lopez v. Muñoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000) (citing *Atkinson Gas Co. v. Albrecht*, 878 S.W.2d 236, 240 (Tex. Ct. App. 1994)). Bear Stearns argues that since Dow Corning proposed the clause in order to induce settlement with the Plaintiffs, thereby avoiding costly litigation, Dow Corning cannot now assert that the clause is illegal. However, regardless of whether quasi-estoppel would be appropriate here, Texas courts have clearly stated that one cannot be estopped from arguing that a contract term is illegal for public policy reasons. *See, e.g.*, *In re Kasschau*, 11 S.W.3d 305, 312-14 (Tex. Ct. App. 1999); *see also In re Calderon*, 96 S.W.3d 711, 719-20 (Tex. Ct. App. 2003). Accordingly, under Texas law, Dow Corning simply cannot be estopped from asserting the affirmative defense of illegality, even if quasi-estoppel would otherwise be applicable. Because Dow Corning did indeed assert this defense, and because we conclude that this defense has merit, Bear Stearns's argument fails.

**III.**

Because we conclude that Dow Corning met its burden of showing that the liquidated damages clause at issue is a penalty clause unenforceable under Texas law for reasons of public policy, we need not address whether a condition precedent to enforcement of the clause was met. We therefore **AFFIRM** both the district court's denial of Bear Stearns's summary judgment motion and the grant of summary judgment to Dow Corning.