NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0174n.06
Filed: April 1, 2008

No. 07-1351


UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

SCOTT J. BELKNAP, III,

    Plaintiff-Appellant,

v.

J.B. HUNT TRANSPORT, INC., and EARL A.
DEDRICK, jointly and severally,

    Defendants-Appellees.

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

                                       /


BEFORE:    KEITH, CLAY, and GILMAN, Circuit Judges.

    **CLAY, Circuit Judge.**  In this diversity action, Plaintiff Scott J. Belknap, III appeals the district court's grant of summary judgment in favor of Defendants Earl A. Dedrick and J. B. Hunt Transport, Inc. on Plaintiff's Michigan-law tort claim for non-economic damages resulting from an automobile accident. Plaintiff argues that under the Michigan No Fault Act, Mich. Comp. Laws § 500.3101 *et seq*. (2002), he has presented a factual issue for the jury regarding whether he is entitled to non-economic damages. We agree and, for the reasons that follow, we **REVERSE** the district court's opinion and order, and **REMAND** the case to the district court for further proceedings.

## I.  BACKGROUND

No. 07-1351

This case arises from a September 1, 2004 automobile accident in which Defendant Earl A. Dedrick, driving a truck for his employer, Defendant J. B. Hunt Transport, Inc., rear-ended Plaintiff's vehicle.[1] As a result of this accident, Plaintiff suffered and was treated for orthopedic injuries to his left shoulder, lower back, and right hand. Plaintiff may also have suffered a closed-head neurological injury. Due to these injuries, Plaintiff was unable to work for almost a year in his job as a master manual modeler at Ford Motor Company.

On May 24, 2005, Plaintiff filed a negligence tort action against Defendants in Michigan's Wayne County Circuit Court seeking non-economic damages arising from this automobile accident. On August 25, 2005, Defendants removed the case to the United States District Court for the Eastern District of Michigan based on the parties' diversity of citizenship. *See* 28 U.S.C. § 1332 (2000).

On May 2, 2006, Defendants filed a motion for summary judgment, arguing that Plaintiff's injuries were not sufficient to satisfy the injury threshold of "serious impairment of body function" required for the recovery of non-economic damages by Michigan's No Fault Act. *See* Mich. Comp. Laws §500.3135(1). Shortly thereafter, on May 26, 2006, Plaintiff filed a timely response to this motion, contending that, pursuant to a different section of the Michigan No Fault Act, Mich. Comp. Laws § 500.3135(2)(a)(ii), there was a genuine issue of material fact regarding whether Plaintiff had suffered a serious impairment of body function. This response was accompanied by an affidavit from Plaintiff's doctor, Peter Samet, M.D., in which Dr. Samet stated:

[1]The material facts of this case, as presented in the parties' pleadings, depositions, and answers, were accurately summarized by the district court in its February 6, 2007 opinion, whose factual account we hereby incorporate by reference. *See Belknap v. J. B. Hunt Transport, Inc.*, No. 05-73323, 2007 WL 436124, at * 1-3 (E.D. Mich. Feb. 6, 2007).

> Based on history taken from Mr. Belknap, my review of his medical records, my complete medical evaluation as well as my education and experience in treating and diagnosing closed head injuries, it was and is my belief that Mr. Belknap may have sustained a serious neurological injury, and in fact did sustain a traumatic brain injury in the automobile collision of September 1, 2004.

J.A. at 147 (Affidavit of Dr. Peter Samet).

The district court heard oral arguments concerning the motion for summary judgment on June 28, 2006. At oral argument, the district court directed the parties to take deposition testimony from Dr. Samet and submit supplemental briefs discussing his testimony. This deposition was conducted on July 21, 2006 and the parties filed their supplemental briefs in September of 2006.

On February 6, 2007, the district court issued an opinion and order granting Defendants' motion for summary judgment and dismissing the case. *Belknap v. J. B. Hunt Transport, Inc.*, No. 05-73323, 2007 WL 436124, at * 9 (E.D. Mich. Feb. 6, 2007). In particular, the district court found that: (1) Plaintiff's injuries did not, under *Kreiner v. Fischer*, 683 N.W.2d 611 (Mich. 2004), amount to a "serious impairment of body function" as required for recovery of non-economic damages by Mich. Comp. Laws § 500.3135(1); and (2) Plaintiff did not qualify for the "serious neurological injury" exception of Mich. Comp. Laws § 500.3135(2)(a)(ii). *Id*. at *4-8.

On March 7, 2007, Plaintiff filed this timely appeal.

## II. DISCUSSION

### A. Standard of Review

We review a district court's grant of summary judgment *de novo*. *Mutchler v. Dunlap Mem'l Hosp.*, 485 F.3d 854, 857 (6th Cir. 2007). Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as

to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In evaluating the evidence presented, a court must draw all inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A genuine issue of material fact exists when there are "disputes over facts that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

## B. Applicable Law

We must apply Michigan law when considering Plaintiff's state tort claim. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). In applying Michigan law, we must "follow the decisions of the state's highest court when that court has addressed the relevant issue." *Talley v. State Farm Fire & Cas. Co.*, 223 F.3d 323, 326 (6th Cir. 2000). If the issue has not been directly addressed, we must "anticipate how the relevant state's highest court would rule in the case and are bound by controlling decisions of that court." *In re Dow Corning Corp.*, 419 F.3d 543, 549 (6th Cir. 2005). "Intermediate state appellate courts' decisions are also viewed as persuasive unless it is shown that the state's highest court would decide the issue differently." *Id*.

## C. Analysis

Under the Michigan No Fault Act, a person may be "subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement."

Mich. Comp. Laws § 500.3135(1). The statute defines "serious impairment of body function" as "an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life." Mich. Comp. Laws § 500.3135(7). The statute also specifies that:

> The issues of whether an injured person has suffered serious impairment of bodily function or permanent serious disfigurement are questions of law for the court if the court finds either of the following:
>
> (i)    There is no factual dispute concerning the nature and extent of the person's injuries.
>
> (ii)   There is a factual dispute concerning the nature and extent of the person's injuries, but the dispute is not material to the determination as to whether the person has suffered a serious impairment of body function of permanent serious disfigurement. *However, for a closed-head injury, a fact for the jury is created if a licensed allopathic or osteopathic physician who regularly diagnoses or treats closed-head injuries testifies under oath that there may be a serious neurological injury.*

Mich. Comp. Laws § 500.3135(2)(a)(i)-(ii) (emphasis added).

In *Kreiner v. Fischer*, the Michigan Supreme Court set out a "multi-step" process that a court must use for "determining whether a plaintiff who alleges 'serious impairment of bodily function' as a result of a motor vehicle accident meets the statutory threshold for third party tort recovery" under the Michigan No Fault Act. 683 N.W.2d at 625. The court explained:

> First, a court must determine that there is no factual dispute concerning the nature and extent of the person's injuries; or if there is a factual dispute, that it is not material to the determination whether the person has suffered a serious impairment of body function. If a court so concludes it may continue to the next step. But if a court determines [that there are material factual disputes,] the court may not decide the issue as a matter of law.
> Second, if a court can decide the issue as a matter of law, it must next determine if an "important body function" of the plaintiff has been impaired. It is

5

insufficient if the impairment is of an unimportant body function. Correspondingly, it is also insufficient if an important body function has been injured but not impaired. If a court finds that an important body function has in fact been impaired, it must then determine if the impairment is objectively manifested. Subjective complaints that are not medically documented are insufficient.

[Finally,] [i]f a court finds that an important body function has been impaired, and the impairment is objectively manifested, it then must determine if the impairment affects the plaintiff's general ability to lead his or her life. In determining whether the course of the plaintiff's normal life has been affected, a court should engage in a multifaceted inquiry, comparing the plaintiff's life before and after the accident as well as the significance of any affected aspects on the course of the plaintiff's overall life. Once this is identified, the court must engage in an objective analysis regarding whether any difference between the plaintiff's pre- and post-accident lifestyle has actually affected the plaintiff's "general ability" to conduct the course of his life. Merely "*any* effect" on the plaintiff's life is insufficient because a de minimus effect would not, as objectively viewed, affect the plaintiff's "general ability" to lead his life.

The following nonexhaustive list of objective factors may be of assistance in evaluating whether the plaintiff's "general ability" to conduct the course of his normal life has been affected: (a) the nature and extent of the impairment, (b) the type and length of treatment required, (c) the duration of the impairment, (d) the extent of any residual impairment, and (e) the prognosis for eventual recovery. . . . [However,] in order to determine whether one has suffered a "serious impairment of body function," the totality of the circumstances must be considered, and the ultimate question is whether the impairment "affects the person's general ability to conduct the course of his or her normal life."

*Id*. at 625-26 (citations omitted). Under the terms of this *Kreiner* framework, a court must first determine whether the issue of "serious impairment of bodily function" can be resolved as a question of law. Only if it answers this threshold question in the affirmative may the court proceed to consider, on a fact specific basis, whether an important bodily function has been impaired and whether that impairment affects the injured person's general ability to lead his or her normal life. Accordingly, we begin our analysis with a consideration of whether Plaintiff's "serious impairment of bodily function" claim should be resolved as matter of law.

As noted above, the plain and unambiguous language of Mich. Comp. Laws § 500.3135(2)(a)(ii) directs that:

> [F]or a closed-head injury, a question of fact for the jury is created if a licensed allopathic or osteopathic physician who regularly diagnoses or treats closed-head injuries testifies under oath that there may be a serious neurological injury.

The Michigan Court of Appeals has explained that, under the statute, "[i]f a properly qualified doctor testifies 'that there may be a serious neurological injury,' there would *automatically* be a jury question." *Minter v. Grand Rapids*, 739 N.W.2d 108, 112 (Mich. Ct. App. 2007) (emphasis in original). However, the statute "requires more than a diagnosis that a plaintiff has sustained a closed-head injury." *Churchman v. Rickerson*, 611 N.W.2d 333, 336 (Mich. Ct. App. 2000). To create a jury issue, "the statute requires some indication by the doctor providing testimony that the injury sustained by the plaintiff was severe." *Id*. at 337.

We find that, in the instant case, Dr. Samet's sworn affidavit and deposition were sufficient to create a question of fact for the jury under Mich. Comp. Laws § 500.3135(2)(a)(ii). Dr. Samet submitted an affidavit to the district court in which he made a sworn statement of the following facts:

> I am a practicing medical doctor specializing in the treatment of spinal and sports injuries, as well as occupational medicine . . .
>
> That as such I regularly diagnose and treat closed head injuries. . . .
>
> Based on history taken from Mr. Belknap, my review of his medical records, my complete medical evaluation as well as my education and experience in treating and diagnosing closed head injuries, it was and *is my belief that Mr. Belknap may have sustained a serious neurological injury*, and in fact did sustain a traumatic brain injury in the automobile collision of September 1, 2004.

J.A. at 146-47 (Affidavit of Dr. Peter Samet) (emphasis added).

While the parties dispute whether this affidavit alone was sufficient to create a jury question under Mich. Comp. Laws § 500.3135(2)(a)(ii), we need not resolve this dispute because Dr. Samet also provided similar sworn testimony at his deposition.[2] At his deposition, Dr. Samet testified that he is a board certified physician trained in neurophysiology who regularly diagnoses and treats closed-head injuries. *See* J.A. at 269 (Deposition of Dr. Peter Samet). Dr. Samet was also asked about his diagnosis of Plaintiff as possibly having a serious neurological injury:

> Q. Well, you [Dr. Samet] say in here [referring to Dr. Samet's affidavit] that he [Plaintiff] may have sustained a serious neurological injury. Would you agree with me that he may have not?
>
> A. Well, anything is possible, but this is based on my evaluation as well as review of other records and I think that it's probably more likely than not that that is the case, that he had sustained it.
>
> Q. Well in here, you say that he may have sustained it. It doesn't say more likely than not, so if that's your answer, that's fine. In here, you say he may have sustained a serious neurological injury . . . So my question is: Would you agree that it's – that he may not have sustained a neurological injury according to your own affidavit?
>
> A. It could be possible, yes.

---

[2]We note however that, in our opinion, Dr. Samet's affidavit is sufficient to create a jury question under Mich. Comp. Laws § 500.3135(2)(a)(ii). Contrary to what the district court suggested in its opinion, *see Belknap*, 2007 WL 436124, at *6, nothing in § 500.3135(2)(a)(ii) or Michigan case law prevents an affidavit from creating a jury question. In an affidavit, a doctor can "testify under oath that there may be a serious neurological injury." Mich. Comp. Laws § 500.3135(2)(a)(ii). Moreover, contrary to what Defendant suggests, *see* Def. Br. at 32-36, the tense of the verb used in Dr. Samet's affidavit does not undermine this conclusion. While it is true that Dr. Samet's affidavit is phrased in the past tense, stating that Plaintiff "*may have sustained* a serious neurological injury," J.A. at 147 (Affidavit of Dr. Peter Samet) (emphasis added), the fact that Plaintiff has possibly suffered a past injury logically implies that "there *may be* a serious neurological injury" in existence presently. Mich. Comp. Laws § 500.3135(2)(a)(ii) (emphasis added).

Q.     All right. And when you say may have sustained, are you indicating that he had had this previously and that he's recovered from it when you use the word "sustained"?

A.     It sounds like an issue of linguistics. I believe that he may have recovered I would imagine, although I haven't seen more recent evaluations from Dr. Sewick's office who has been investigating him and treating him for this problem. I'd have to review their records. It's certainly possible that he continues to have these symptoms.

Q.     So sitting here today, you can't say one way or another whether he currently has a serious neurological injury?

A.     I believe that the condition of traumatic brain injury does exist for him. In terms of what sort of sequelae he has from it, again, I haven't been treating him specifically for this problem in order for me to make that determination. I would have to discuss it with Dr. Sewick.

Q.     Let's not confuse the term traumatic brain injury, and this may be a matter of linguistics, but we've got two different terms, serious neurological injury and the other is traumatic brain injury.

A.     Right.

Q.     I'm talking about serious neurological injury. Do you have an opinion sitting here today whether or not Mr. Belknap currently may have a serious neurological injury?

A.     Yes, I do.

Q.     And does he?

A.     I believe so, yes.

Q.     I'm sorry?

A.     Yes, I believe he does.

Q.     You believe that he may have sustained a serious neurological injury?

A.     Yes.

9

*Id.* at 271. Finally, Dr. Samet was questioned about the seriousness of Plaintiff's neurological injury:

Q. So what type of head injury would you consider to be a serious neurological injury?

A. I would say that anyone, any injury that affects his [Plaintiff's] ability to function and interact with the outside world, including his job and his family.

Q. If I told you that a definition of serious neurological injury is an injury that is dangerous, potentially resulting in death or other severe consequences, would you agree with that definition?

A. Well, that would certainly be one extreme of it, but I would agree with that as well.

\* \* \*

Q. I'm going to ask you to assume that the definition of serious neurological injury is an injury that is dangerous, potentially resulting in death or other severe consequences. Is it your opinion that Mr. Belknap suffered a serious neurological injury working with that definition?

A. Yes.

*Id.* at 272-73. In clarifying the seriousness of Plaintiff's potential injury, Dr. Samet testified:

Q. [S]o you're saying its more likely than not, but let's say he has probable resolving post-concussion syndrome. Are you telling the jury, Dr. Samet, that that is a life-threatening condition?

A. Under certain sets of circumstances, it certainly could be.

Q. In Mr. Belknap's circumstances, knowing him, you've followed him, do you believe that this condition that he may or may not have is life threatening to him?

A. Depends on what you mean by that. Obviously he's not going to die at that moment. He's not bleeding in his brain as far as my knowledge, although I haven't seen those diagnostic tests you're referring to. However, one of the aspects of traumatic brain injury

10

isn't so much that person could die like a heart attack die, but under certain sets of circumstances, unfortunately it's and in some of the patients I've treated because of their emotional derangement, they're far more likely to commit suicide, get involved in drug abuse, get involved in a car accident or to be acting in an untoward manner to normal stimuli.

*Id*. at 283.

Viewing these colloquies in the light most favorable to Plaintiff reveals that Dr. Samet did offer testimony that Plaintiff "may be" suffering from a "serious neurological injury." Mich. Comp. Laws § 500.3135(2)(a)(ii). Dr. Samet also offered an explanation that Plaintiff's neurological injury may be severe. *See Churchman*, 611 N.W.2d at 337. Under Mich. Comp. Laws § 500.3135(2)(a)(ii), this sworn testimony automatically created a question of fact for the jury. Accordingly, we hold that the district court erred in awarding summary judgment to Defendants.

### III. CONCLUSION

For the foregoing reasons, the judgment of the district court is **REVERSED** and the case is **REMANDED** to the district court for further proceedings consistent with this opinion.