William BERRINGTON, Plaintiff,

v.

WAL–MART STORES, INC, Defendant.

No. 1:10–cv–427.

United States District Court,
W.D. Michigan,
Southern Division.

July 28, 2011.

William F. Piper, William F. Piper PLC, Portage, MI, for Plaintiff.

Kelly Ann Petrocelli, Barnes & Thornburg LLP, Grand Rapids, MI, Michael P. Palmer, Barnes & Thornburg LLP, South Bend, IN, for Defendant.

### OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

PAUL L. MALONEY, Chief Judge.

Defendant Wal–Mart Stores filed a motion to dismiss, contending that Michigan does not recognize the cause of action in the complaint. (ECF No. 6.)

Plaintiff Berrington ("Berrington") filed suit in Ninth Circuit Court in Kalamazoo County, Michigan. Berrington alleges a single claim, a violation of public policy for failing to rehire him for an impermissible reason. Defendant Wal–Mart Stores ("Wal–Mart") timely removed the action to federal court on May 3, 2010. Rather than filing an answer to the complaint, Wal–Mart filed this motion to dismiss. Berrington filed a response. (ECF No. 10.) Wal–Mart filed a reply. (ECF No. 11.) Having reviewed the complaint, motion, briefs, and relevant legal authority, oral argument is not necessary to resolve the motion. *See* W.D. LCivR 7.2(d).

### JURISDICTION

■ The party seeking removal bears the burden of establishing that the district court has original jurisdiction. *Long v. Bando Mfg. of Am., Inc.*, 201 F.3d 754, 757 (6th Cir.2000). Berrington is a citizen of Michigan, residing in Van Buren County. (Compl.¶ 1.) The allegations in the complaint concern events alleging occurring at a Wal–Mart store in Kalamazoo, Michigan. Wal–Mart Stores East, the entity that owns and operates the store in Kalamazoo, is a limited partnership, organized under the laws of the State of Delaware with its principal place of business in the State of Arkansas. (Notice of Removal ¶ 5.) The limited partners, WSE Management and WSE Investment are Delaware limited liability companies with their principal places of business in Arkansas. (*Id.*) The parent company of Wal–Mart Stores East, Wal–Mart Stores, Inc., is incorporated in Delaware and has its principal place of business in Arkansas. (*Id.*) Wal–Mart asserts Berrington's claim for back-pay, by itself, could amount to over $92,000. (*Id.* ¶ 13.) Under these facts, this Court has original jurisdiction over this action under the diversity statute. *See* 28 U.S.C. § 1332(a).

### LEGAL STANDARDS
### MOTION TO DISMISS–12(b)(6)

■ Under the notice-pleading requirements, a complaint must contain a short and plain statement of the claim showing how the pleader is entitled to relief. Fed.R.Civ.P. 8(a)(2). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The court need not accept as true

any legal conclusions couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949–50, 173 L.Ed.2d 868 (2009). To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must provide sufficient factual allegations that, if accepted as true, are sufficient to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955, and the "claim to relief must be plausible on its face" *Id.* at 570, 127 S.Ct. 1955.

## FEDERAL COURT'S APPLICATION OF STATE LAW

■■■ When an action comes before a federal court under the diversity jurisdiction statute, the district court applies the substantive law of the forum state. *Cen-Tra, Inc. v. Estrin*, 538 F.3d 402, 409–10 (6th Cir.2008). When applying state law, federal courts must "anticipate how the relevant state's highest court would rule in the case and are bound by controlling decisions of that court." *In re Dow Corning Corp.*, 419 F.3d 543, 549 (6th Cir.2005) (citation omitted). "Intermediate state appellate court's decisions are also viewed as persuasive unless it is shown that the state's highest court would decide the issue differently." *Id.* (citation omitted); *see King v. Order of United Commercial Travelers of America*, 333 U.S. 153, 161, 68 S.Ct. 488, 92 L.Ed. 608 (1948) ("[A] federal court adjudicating a matter of state law in a diversity suit i[s], 'in effect, only another court of the State'; it would be incongruous indeed to hold the federal court bound by a decision which would not be binding on any state court.").

## ASSERTED FACTS

Berrington asserts the following facts in his complaint. Berrington began working for the Wal–Mart store on West Main Street in Kalamazoo, Michigan, in November 2003. (Compl.¶ 6.) During his employ, Berrington took a number of approved leaves of absence. (*Id.* ¶ 8.) On February 22, 2007, Berrington began a leave of absence that was approved through April 30, 2007. (*Id.* ¶ 8.) Berrington, however, did not return to work after April 30. According to Berrington, "[b]ecause of the leave of absence time that he had built up, and because of conversations he had with Wal–Mart managers, [he] did not believe he needed to update or extend his leave of absence that ended on April 30, 2007." (*Id.* ¶ 9.) In mid-May, a personnel manager contacted Berrington and told him to update his leave of absence paperwork, which Berrington did. (*Id.* ¶¶ 10–11.) Three days after Berrington updated his leave of absence paperwork, he was summoned to the store and informed, based on store policy, he would be terminated for not returning to work at the end of his leave of absence. (*Id.*¶ 12.) Berrington was told he could be rehired after ninety days. (*Id.*)

The Wal-Mart's termination paperwork indicated Berrington voluntarily terminated his employment by failing to return from a leave of absence. (Compl.¶ 13.) The paperwork also recommended rehiring Berrington. (*Id.*) Under the impression that he had been involuntarily terminated, Berrington applied for unemployment benefits with the State of Michigan. (*Id.* ¶ 15.) Wal–Mart opposed Berrington's request for benefits on the basis that Berrington had quit his job of his own volition. (*Id.* ¶ 16.)

While the dispute over unemployment benefits was ongoing, ninety days passed and Berrington reapplied for employment with Wal–Mart. (Compl.¶ 18.) Wal–Mart did not offer Berrington a position. (*Id.* ¶ 19.) Since late August 2007, the Wal–Mart store on West Main Street has hired a number of employees to positions for which Berrington is qualified. (*Id.* ¶ 30.) After another ninety days passed, Berrington applied again for a position at the Wal–

Mart on West Main Street, without success. (*Id.* ¶ 22.) Berrington believes Wal–Mart refuses to hire him because he filed for unemployment benefits, which were eventually awarded over Wal–Mart's objections. (*Id.* ¶ 24.)

## ANALYSIS

 Assuming Plaintiff's well-pled facts to be true, and further assuming that these facts establish a wrongful refusal to rehire[1], this Court must determine whether Michigan law recognizes wrongful refusal to rehire as a cause of action. Absent some indication to the contrary, in Michigan, an employment relationship is presumed to be at-will, although the presumption may be rebutted. *Lytle v. Malady (on rehearing)*, 458 Mich. 153, 579 N.W.2d 906, 910 (1998). The Michigan Supreme Court has recognized "[i]n general, in the absence of a contractual basis for holding otherwise, either party to an employment contract for an indefinite term may terminate it at any time for any, or no, reason." *Suchodolski v. Mich. Consol. Gas Co.*, 412 Mich. 692, 316 N.W.2d 710, 711 (1982) (per curiam); *see Silberstein v. Pro–Golf of Am., Inc.*, 278 Mich.App. 446, 750 N.W.2d 615, 621 (2008). However, certain discharges may be so contrary to public policy as to be actionable. *Suchodolski*, 316 N.W.2d at 711; *Silberstein*, 750 N.W.2d at 621. Michigan courts have invoked the public policy exception to the at-will rule most often in three situations: (1) adverse treatment of employees who act in accordance with a statutory right or duty; (2) an employee's failure or refusal to violate a law in the course of employment; and (3) an employee's exercise of a right conferred by a well-established legislative enactment. *Kimmelman v. Heather Downs Mgt. Ltd.*, 278 Mich.App. 569, 753 N.W.2d 265, 268

(2008) (citing *Suchodolski*, 316 N.W.2d at 711–12).

Berrington acknowledges that no Michigan state court has considered whether a failure to rehire may violate public policy. (Pl. Br. 8.) Berrington has not provided authority from any jurisdiction where a court enforced a retaliatory failure to hire or rehire, absent some other statutory violation. Berrington argues that in *Sventko v. Kroger Co.*, 69 Mich.App. 644, 245 N.W.2d 151 (1976), the Michigan Court of Appeals recognized an anti-retaliation public policy claim in the employment context, even though there was no explicit legislative anti-retaliation provision. *Sventko*, however, is readily distinguishable from the facts here. First, *Sventko* involved a wrongful discharge claim for filing a worker's compensation claim, not a failure to rehire claim. *Sventko*, 245 N.W.2d at 152. Second, the court found significant that the Legislature had made it a crime for employers to consistently terminate employees before they qualify for worker's compensation in order to avoid the provisions of the statute. *Id.* at 154 (citing Mich. Comp. Laws § 418.125).

 Berrington relies on the Michigan Employment Security Act ("MESA"), Mich. Comp. Laws § 421.1, *et seq.* Berrington argues Michigan has a strong public policy for the provision of unemployment benefits to individuals who have been laid-off or otherwise involuntarily terminated through no fault of their own. *See* Mich. Comp. Laws § 421.2. As a remedial statute, MESA must be liberally construed to achieve its intended goal. *Empire Iron Mining P'ship v. Orhanen*, 455 Mich. 410, 565 N.W.2d 844, 848 (1997). Similar to the situation in *Sventko* where the worker's compensation legislation did not have an

---

1. Wal–Mart has not argued that the facts in the complaint do not establish a wrongful refusal to rehire.

anti-retaliation provision, MESA does not have an anti-retaliation provision. Berrington argues, in order to vindicate the public policy purposes of MESA, an anti-retaliation provision must be implied or laid-off workers with an expectation of being rehired will be forced to choose between filing for unemployment benefits or future employment with the same company. Even if the court adopted that position, it would be of no assistance to Plaintiff. Plaintiff was not laid-off and his claim is a failure to rehire.

The Sixth Circuit Court of Appeals, Judge Clay writing, has cautioned federal courts sitting in diversity jurisdiction about finding new causes of action under state law.

> As the First Circuit explained, federal courts sitting in a diversity case are in "a particularly poor position ... to endorse [a] fundamental policy innovation.... Absent some authoritative signal from the legislature or the courts of [the state], we see no basis for even considering the pros and cons of innovative theories...." *Dayton v. Peck, Stow & Wilcox Co. (Pexto),* 739 F.2d 690, 694 (1st Cir.1984). Federal courts hearing diversity matters should be extremely cautious about adopting "substantive innovation" in state law. *Rhynes v. Branick Mfg. Corp.,* 629 F.2d 409, 410 (5th Cir. Unit A 1980).

*Combs v. Int'l Ins. Co.,* 354 F.3d 568, 577–78 (6th Cir.2004); *see Proctor & Gamble Co. v. Haugen,* 222 F.3d 1262, 1280 (10th Cir.2000) ("[I]t is not our place to expand Utah state law beyond the bounds set by the Utah Supreme Court or, in the absence of Utah Supreme Court precedent, by the lower Utah courts."); *City of Philadelphia v. Lead Indus. Ass'n, Inc.,* 994 F.2d 112, 123 (3d Cir.1993) ("In a diversity case, however, federal courts may not engage in judicial activism. Federalism concerns require that we permit state courts to decide whether and to what extent they will expand state common law."); *Tidler v. Eli Lilly and Co.,* 851 F.2d 418, 424 (D.C.Cir.1988) ("Judicial pioneers must no doubt make bold forays into *terra incognita* in order to chart the way to justice, but that is not the office of a federal court exercising diversity jurisdiction."). The Sixth Circuit has further cautioned that, when faced with a choice between expanding liability or restricting liability, federal courts sitting in diversity jurisdiction and interpreting state law " 'should choose the narrower and more reasonable path.' " *Combs,* 354 F.3d at 577 (quoting *Todd v. Societe Bic, S.A.,* 21 F.3d 1402, 1412 (7th Cir.1994) (en banc)).

■ Although Berrington's legal theory may ultimately be validated by a Michigan state court, the development of Michigan common law should be left to Michigan courts. Following the guidelines from the Sixth Circuit, this Court, like other federal courts, will not modify and write state law to create a public policy exception to the employment-at-will presumption in a failure to hire or rehire context. *See Peck v. Elyria Foundry Co.,* 347 Fed.Appx. 139, 148 (6th Cir.2009) (affirming the district court's dismissal of a failure to hire or retaliation claim under Ohio law because the plaintiff-appellant offered no cases suggesting Ohio would extend the public policy exception to failure to hire cases); *see also Sanchez v. Philip Morris Inc.,* 992 F.2d 244, 249 (10th Cir.1993) ("We note that the Oklahoma Supreme Court has been very precise in carving out narrow exceptions to the employment-at-will doctrine, and we are unwilling to unnecessarily expand those exceptions. Therefore, the district court properly dismissed Appellee's public policy tort claim as Oklahoma has yet to create an exception to the employment-at-will doctrine in the failure to hire context."); *Bools v. Gen. Elec. Co.,* 70

F.Supp.2d 829 (S.D.Ohio 1999) ("While this Court recognizes Plaintiff's argument that the public policy against age discrimination and retaliation would be furthered by a claim in tort for wrongful hiring decisions or retaliation, we decline to extend the scope of Ohio's exception to the doctrine of employment-at-will.... Nonetheless, we are 'not free to engraft' modifications onto state laws even if we would consider those modifications to be an improvement." (citations omitted)).

## CONCLUSION

Neither the Michigan Supreme Court nor the Michigan Court of Appeals have indicated any willingness to expand the wrongful termination public policy exception to the employment-at-will presumption to the hiring or rehiring context. Therefore, this Court has no basis to find that Michigan state courts would recognize Berrington's cause of action. The development of state law is best left to the state legislature and the Michigan Supreme Courts.

### *ORDER*

For the reasons provided in the accompanying opinion, Defendant Wal–Mart Stores' motion to dismiss (ECF No. 6) is **GRANTED.**

**IT IS SO ORDERED.**