*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 12a0292p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

WILLIAM BERRINGTON,

　　　　　*Plaintiff-Appellant,*

　　　　*v.*

WAL-MART STORES, INC.,

　　　　　*Defendant-Appellee.*

No. 11-1988

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:10-cv-427—Paul Lewis Maloney, Chief District Judge.

Decided and Filed: August 30, 2012

Before: ROGERS and KETHLEDGE, Circuit Judges; MARBLEY, District Judge.[*]

_____

### COUNSEL

**ON BRIEF:** William F. Piper, WILLIAM F. PIPER, PLC, Portage, Michigan, for
Appellant. Michael P. Palmer, BARNES & THORNBURG LLP, South Bend, Indiana,
Kelly A. Petrocelli, BARNES & THORNBURG LLP, Grand Rapids, Michigan, for
Appellee.

_____

### OPINION

_____

　　　ALGENON L. MARBLEY, District Judge.　　Plaintiff-Appellant William
Berrington alleges that Defendant-Appellee Wal-Mart Stores, Inc. ("Wal-Mart")
wrongfully refused to rehire him because he filed for unemployment benefits.　The
district court dismissed Berrington's lawsuit pursuant to Federal Rule of Civil Procedure
12(b)(6), finding no basis to hold that Michigan courts would recognize Berrington's

_____

[*]The Honorable Algenon L. Marbley, United States District Judge for the Southern District of
Ohio, sitting by designation.

cause of action.  Berrington appeals, arguing that the district court erred by ruling that his Complaint fails to state a public policy cause of action under Michigan law for an employer's refusal to hire or rehire an individual in retaliation against that person for filing for unemployment benefits.  In the alternative, Berrington claims the district court should have certified the issue to the Michigan Supreme Court.  We affirm the district court.

## I.  BACKGROUND

In November 2003, Berrington began working for Wal-Mart in its West Main Street store located in Kalamazoo County, Michigan.  During his employ, Berrington took a number of approved leaves of absence.  On February 22, 2007, Berrington began a leave of absence that was approved through April 30, 2007.  Berrington, however, did not return to work after April 30.  Berrington claims that because of the leave of absence time he had accumulated, and because of conversations he had with Wal-Mart managers, he did not believe he needed to update or extend his leave of absence that ended on April 30, 2007.

In mid-May, a personnel manager contacted Berrington and told him to update his leave of absence paperwork, which Berrington did.   Three days after Berrington updated his leave of absence paperwork, however, Berrington was summoned to the store and informed that based on store policy, he would be terminated for not returning to work at the end of his leave of absence.  Berrington was told by Wal-Mart that he could be rehired after ninety days.

Berrington applied for unemployment benefits with the State of Michigan, with the understanding that he had been involuntarily terminated.  Wal-Mart opposed Berrington's request for unemployment benefits on the basis that Berrington had quit his job of his own volition.  Wal-Mart's termination documents indicated that Berrington voluntarily terminated his employment by failing to return from a leave of absence.  The paperwork also recommended rehiring Berrington.   While the dispute over unemployment benefits was ongoing, ninety days passed and Berrington reapplied for

employment with Wal-Mart.  Wal-Mart did not offer Berrington a position.  After another ninety days passed, Berrington reapplied a second time for a position at the same West Main Street Wal-Mart store, again without success.  Since August 2007, the Wal-Mart store on West Main Street has hired a number of employees to positions for which Berrington is qualified.  Berrington contends Wal-Mart refused to hire him because he filed for unemployment benefits, which he eventually received.

On March 31, 2010, Berrington filed his Complaint against Wal-Mart in the Ninth Circuit Court in Kalamazoo County, Michigan, alleging the above facts.  The Complaint contains a single cause of action, claiming Wal-Mart violated Michigan public policy by refusing to rehire him because he filed for unemployment benefits.  On May 3, 2010, Wal-Mart removed the action to federal court based on diversity jurisdiction under 28 U.S.C. § 1332, and subsequently moved to dismiss Berrington's Complaint.  On July 28, 2011, the district court rendered an opinion and order granting Wal-Mart's motion to dismiss, concluding that since "[n]either the Michigan Supreme Court nor the Michigan Court of Appeals have indicated any willingness to expand the wrongful termination public policy exception to the employment-at-will presumption to the hiring or rehiring context . . . this Court has no basis to find that Michigan state courts would recognize Berrington's cause of action." *Berrington v. Wal-Mart Stores, Inc.*, 799 F. Supp. 2d 772, 777 (W.D. Mich. July 28, 2011).  The district court entered judgment in favor of Wal-Mart.  This appeal followed.

## II.  LAW AND ANALYSIS

### A.  Standard of Review

We review de novo a district court's decision to grant or deny a motion to dismiss under Rule 12(b)(6) for failure to state a claim, using the same standards employed by the district court. *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). When considering a motion to dismiss, we must accept as true any well-pleaded factual allegations in the plaintiff's complaint, *see JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007), but we need not accept any legal

conclusions or unwarranted factual inferences. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, the Supreme Court has held that we should review de novo a district court's interpretation of state law in diversity cases. *See Salve Regina Coll. v. Russell*, 499 U.S. 225, 231 (1991); *see also Andrews v. Columbia Gas Transmission Corp.*, 544 F.3d 618, 624 (6th Cir. 2008).

## B. Berrington's Wrongful Failure to Rehire Claim

Berrington's appeal presents us with the question of whether Michigan law recognizes a public policy cause of action for an employer's wrongful refusal to rehire because an individual claimed unemployment benefits. In this action arising under federal diversity jurisdiction, we apply the substantive law of Michigan, as the forum state. *CenTra, Inc. v. Estrin*, 538 F.3d 402, 409 (6th Cir. 2008). Faithful application of a state's law requires federal courts to "anticipate how the relevant state's highest court would rule in the case," and in doing so we are "bound by controlling decisions of that court." *In re Dow Corning Corp.*, 419 F.3d 543, 549 (6th Cir. 2005). Where the Michigan Supreme Court has not addressed the issue presented, "we must predict how the court would rule by looking to all the available data," *Allstate Ins. Co. v. Thrifty Rent-A-Car Sys. Inc.*, 249 F.3d 450, 454 (6th Cir. 2001); however, decisions by "the Michigan Court of Appeals are binding authority where the Michigan Supreme Court has never addressed the issue decided therein." *Morrison v. B. Braun Med. Inc.*, 663 F.3d 251, 257 n.1 (6th Cir. 2011). Federal courts should be "extremely cautious about adopting 'substantive innovation' in state law." *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 578 (6th Cir. 2004) (citation omitted).

Berrington admits that the Michigan Supreme Court has not ruled on whether an employer's refusal to hire or re-hire an individual in retaliation against a person because he filed for unemployment benefits states a private cause of action under Michigan law. Berrington insists, however, that the Michigan Supreme Court "would not hesitate" to recognize such a claim in order to vindicate the state legislature's established public policy of encouraging dismissed workers to file for unemployment benefits, set forth in

the Michigan Employment Security Act ("MESA"), Mich. Comp. Laws § 421.1 *et seq.*[1] Wal-Mart defends the district court's dismissal of Berrington's claim on two bases: Berrington's failure to rehire claim is not based on a recognized public policy; and, even if such a public policy exists, Berrington's request for this Court to create a new tort of wrongful failure to rehire in violation of public policy lacks any support in authority.

The employment relationship between Berrington and Wal-Mart was employment at will. Michigan's general rule regarding termination of an at-will employee is that either party may terminate the employment contract at any time for any or no reason. *See Suchodolski v. Mich. Consol. Gas Co.*, 316 N.W.2d 710, 711 (Mich. 1982) (per curium). Michigan courts, however, "recognize an exception to this rule when the grounds for termination violate public policy." *Morrison*, 663 F.3d at 256 (citing *Suchodolski*, 316 N.W.2d at 711). Public policy proscriptions against terminating an at-will employee are found most often in one of three situations: "(1) 'adverse treatment of employees who act in accordance with a statutory right or duty,' (2) an employee's 'failure or refusal to violate a law in the course of employment,' or (3) an 'employee's exercise of a right conferred by a well established legislative enactment.'" *Kimmelman v. Heather Downs Mgt. Ltd.*, 753 N.W.2d 265, 268 (Mich. Ct. App. 2008) (quoting *Suchodolski*, 316 N.W.2d at 711–12).

---

[1]The Sixth Circuit previously has summarized an employer's duties under Michigan's unemployment compensation benefits scheme:

> Under MESA, Michigan employers are required by state law to remit payments to the MESC to maintain the fund from which unemployment benefits are paid to workers who have lost their jobs through no fault of their own. An employer's rate of contribution under MESA is obtained through application of a complicated statutory formula. In the simplest case, a new employer is merely required to provide MESC with a 2.7 percent contribution. In the most complex case, an employer with an experience rating based on years of participation must make contributions at a rate computed by a four-factor formula.

> There are four components that comprise the unemployment tax for employers with an employment history: (1) chargeable benefits component (CBC); (2) nonchargeable benefits component; (3) account building component (ABC); and (4) solvency tax. Of the foregoing elements, the CBC and the ABC are directly related to the employer's employment history, and directly affect the employer's "experience rating."

*Mich. Empl. Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1137 n.4 (6th Cir. 1991) (internal citations omitted).

Berrington argues his claim for wrongful failure to rehire is cognizable as a violation of Michigan's public policy under *Suchodolski*'s third category, to prohibit retaliation against employees "for exercising a right conferred by a well-established legislative enactment." *See Suchodolski*, 316 N.W.2d at 712. Berrington claims the Michigan Legislature has expressly declared a strong public policy for providing unemployment benefits to deserving individuals;[2] and, further, the district court of the Eastern District of Michigan has recognized an anti-retaliation claim in the unemployment benefits context pursuant to that public policy. *See Stencel v. Augat Wiring Systems*, 173 F. Supp. 2d 669, 679 (E.D. Mich. 2001).

In *Stencel*, the Eastern District of Michigan acknowledged the plaintiff's Michigan law public policy claim of retaliatory discharge for filing unemployment benefits. *See id.* (stating, "[plaintiff's] claim would fall under the third [*Suchodolski*] type of public policy case," but ultimately dismissing plaintiff's claim for failure to show causation). The *Stencel* Court analogized the wrongful termination claim asserted there to claims of wrongful termination in violation of the Legislature's similar public policy for claiming worker's compensation benefits. *Id.*; *see, e.g.*, *Sventko v. Kroger Co.*, 245 N.W.2d 151 (Mich. Ct. App. 1976). The court reasoned that "[l]ike the Worker's Disability Compensation Act . . . the MESA is a legislative construct intended to provide relief from hardship caused by involuntary unemployment." *Stencel*, 173 F. Supp. 2d at 679 (citing *Paschke v. Retool Indus.*, 519 N.W.2d 441 (Mich. 1994)).

---

[2]Berrington relies on Section 421.2 of the MESA, which states as follows:

Sec. 2. Declaration of Policy.

The legislature acting in the exercise of the police power of the state declares that the public policy of the state is as follows: Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this state. Involuntary unemployment is a subject of general interest and concern which requires action by the legislature to prevent its spread and to lighten its burden which so often falls with crushing force upon the unemployed worker and his or her family, to the detriment of the welfare of the people of this state. Social security requires protection against this hazard of our economic life. Employers should be encouraged to provide stable employment. The systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment by the setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own, thus maintaining purchasing power and limiting the serious social consequences of relief assistance, is for the public good, and the general welfare of the people of this state.

Mich. Comp. Laws § 421.2.

Berrington argues his claim should be recognized as well, because the established public policy behind the MESA is equally against refusing to rehire an employee on the basis of claiming unemployment benefits, as it is against terminating an employee on that basis. The common denominator in all the recognized public policy exceptions to at-will employment is the existence of an employment relationship. An employee's right to be hired or rehired by an employer, on the other hand, has never been recognized as actionable, under common law on public policy grounds. As the district court stated below, "Berrington acknowledges that no Michigan state court has considered whether a failure to *rehire* may violate public policy." *Berrington*, 799 F. Supp 2d at 775 (emphasis added). In fact, neither party has been able to provide a *single* decision from *any* jurisdiction enforcing a retaliatory failure to rehire claim in state common law or public policy, absent some other statutory basis.[3]

The district court opined that "Berrington's legal theory may ultimately be validated by a Michigan state court," *Berrington*, 799 F. Supp. 2d at 776; and, indeed, Berrington's proposed equating of failure to rehire with termination is not without its supporters.[4] Without any indications from binding or persuasive authority that Michigan courts are prepared to recognize a private claim for wrongful failure to rehire, however, even if we were inclined to accept Berrington's rationale, our precedent requires us to refrain from doing so on behalf of the Michigan Supreme Court. *See Combs*, 354 F.3d at 577–78 (stating "federal courts sitting in a diversity case are in 'a particularly poor

---

[3]At least one federal court has found it "likely" that a claim for wrongful failure to rehire would be recognized as a state public policy action. *See Simonson v. Trinity Reg'l Health Sys.*, 221 F. Supp. 2d 982, 997 (N.D. Iowa 2002) (presuming "a cause of action for wrongful failure to rehire in retaliation for seeking workers' compensation benefits [in violation of public policy] is cognizable in Iowa, which the court believes is likely the case"). That claim, however, was for retaliation for seeking worker's compensation benefits, not unemployment benefits.

[4]See, e.g., Mark A. Rothenstein, *Wrongful Refusal To Hire; Attacking The Other Half of the Employment-At-Will-Rule*, 24 Conn. L. Rev. 97, 123 (1991-1992) (arguing, "[t]he public policy implications of employer coercion of employees to accept illegal conditions are similar, regardless of whether they come in the context of a hiring demand or a firing threat").

position . . . to endorse [a] fundamental policy innovation . . . .'") (quoting *Dayton v. Peck, Stow & Wilcox Co. (Pexto)*, 739 F.2d 690, 694 (1st Cir. 1984)).[5]

The district court was correct in declining to carve an unprecedented category of public policy claims out of Michigan law in this case, and it did not err in granting Wal-Mart's motion to dismiss Berrington's Complaint.

### C.  Certification to the Michigan Supreme Court

Berrington's alternative argument that the Court should certify the question to the Michigan Supreme Court, which he raises as an afterthought and for the first time here on appeal, is denied.  While we have discretion to certify unsettled questions of state law to a state supreme court, *see, e.g.*, *Am. Booksellers Found. for Free Expression v. Strickland*, 601 F.3d 622, 625 (6th Cir. 2010), "the federal courts generally will not trouble our sister state courts every time an arguably unsettled question of state law comes across our desks." *Pennington v. State Farm Mut. Auto. Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009) (internal quotation marks omitted).  Where, as here, "we see a reasonably clear and principled course, we will seek to follow it ourselves." *Id.*; *see also Geronimo v. Caterpillar, Inc.*, 440 F. App'x 442, 449 (6th Cir. 2011) ("'[T]he appropriate time to seek certification of a state-law issue is before a District Court resolves the issue, not after receiving an unfavorable ruling.'") (unpublished opinion) (quoting *Local 219 Plumbing & Pipefitting Indus. Pension Fund v. Buck Consultants*, *LLC*, 311 F. App'x 827, 831 (6th Cir. 2009)).  It is clear that Michigan courts do not recognize the cause of action appellant urges us to adopt.

The district court's judgment is affirmed.

---

[5]Our restraint in this regard closely follows our prior decision in *Peck v. Elyria Foundry Co.*, 347 F. App'x 139 (6th Cir. 2009) (unpublished opinion).  The plaintiff in *Peck* asserted a "failure to hire" sex discrimination claim under Ohio public policy, but like Berrington "direct[ed] us to no case suggesting that Ohio would extend the [public policy] tort" to a failure to hire scenario. *Id.* at 147–48 (thus holding, "we can quickly dispense with Peck's argument that the district court erred by refusing to allow her to amend her complaint to set forth a public policy tort of refusal to hire").