NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0916n.06

No. 12-5401

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| ANTHONY GADLAGE, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | **FILED** |
| | ) | Oct 24, 2013 |
| v. | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| WINTERS & YONKER, Attorneys at Law, PSC, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY |
| | ) | |
| Defendant-Appellee. | ) | |

Before: GUY, DAUGHTREY, and WHITE, Circuit Judges.

**PER CURIAM.** Plaintiff Anthony Gadlage, a Kentucky attorney, appeals the district court's judgment granting the defendant's motion to dismiss and its order denying a motion to alter or amend that judgment. Gadlage filed this diversity action against Winters & Yonker (W&Y), a law firm incorporated in Florida and doing business in Louisville. The parties have expressly waived oral argument, and we agree that oral argument is not needed. *See* Fed. R. App. P. 34(a).

Requesting injunctive and declaratory relief, as well as compensatory damages, Gadlage alleged that he was wrongfully terminated from his position as an associate for the firm after he refused to follow W&Y's policy of referring personal-injury clients to certain medical clinics owned by Dr. Gary Kompothecras, a Florida chiropractor. Gadlage claimed

that he "refused to engage in the [firm's] quid-pro-quo referral arrangement" because he believed that this arrangement created a conflict of interest in violation of the Kentucky Supreme Court Rules. He also claimed that W&Y retaliated against him by contesting his subsequent application for unemployment benefits.

W&Y moved to dismiss the complaint for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). The district court granted the motion, concluding that Gadlage's allegations failed to establish that his termination was in violation of any public policy that would except him from the "at-will" employment doctrine in Kentucky. The district court also rejected Gadlage's post-termination retaliation claim. Gadlage then filed a motion to alter or amend the district court's order, along with a motion to hold the case in abeyance so that the district court could certify to the Kentucky Supreme Court the question of whether "a violation of the Kentucky Supreme Court Rules can form the basis of a wrongful discharge claim as a 'public policy' exception to the employment-at-will doctrine." The district court denied the motion and refused to certify this question, finding that the Kentucky Supreme Court had sufficiently addressed the issue in *Firestone Textile Co. Div. v. Meadows*, 666 S.W.2d 730 (Ky. 1983), and *Grzyb v. Evans*, 700 S.W.2d 399 (Ky. 1985).

On appeal, Gadlage argues that the Kentucky Supreme Court Rules derive from the commonwealth's constitution and, therefore, trigger the public policy exception to the at-will doctrine. Gadlage cites two Kentucky statutes that allegedly reinforce his claim and three

cases in support of his interpretation: a recent case from the United States District Court for the Eastern District of Kentucky, decided within the context of state contract law, *Martello v. Santana*, 874 F. Supp. 2d 658, 670 (E.D. Ky. 2012), and two state circuit court cases, *Greissman v. Rawlings and Associates*, No. 12-CI-00744 (Oldham Cir. Ct. Apr. 8, 2013), and *Isaacs & Isaacs, PSC v. Rigor*, No. 05-CI-7688 (Jefferson Cir. Ct. Oct. 18, 2010). Gadlage also filed with this court a motion to certify to the Kentucky Supreme Court the same question that he presented in his motion to certify filed in the district court.

We review *de novo* a district court's decision to deny a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Berrington v. Wal-Mart Stores, Inc.*, 696 F.3d 604, 607 (6th Cir. 2012). When considering a Rule 12(b)(6) motion, "we must accept as true any well-pleaded allegations," but "need not accept any legal conclusions or unwarranted factual inferences." *Id.* (citations omitted).

In cases arising under federal diversity jurisdiction, we review *de novo* a district court's interpretation of state law. *Berrington*, 696 F.3d at 607. In such cases, we apply the substantive law of the forum state, "anticipat[ing] how the relevant state's highest court would rule in the case . . . ." *In re Dow Corning Corp.*, 419 F.3d 543, 549 (6th Cir. 2005). Because Kentucky has not addressed the precise issue presented, we must predict how the state supreme court would rule "by looking to all the available data." *Allstate Ins. Co. v. Thrifty Rent-A-Car Sys., Inc.*, 249 F.3d 450, 454 (6th Cir. 2001). We must be "extremely

cautious about adopting substantive innovation in state law." *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 578 (6th Cir. 2004) (internal quotation marks and citation omitted).

As an at-will employee, Gadlage could be discharged for "for good cause, no cause, or for a cause that some might view as morally indefensible." *Firestone*, 666 S.W.2d at 731. Kentucky applies a narrow exception to this general rule when the termination undermines a "most important public policy." *Id.* at 733 (internal quotation marks and citation omitted). The state permits this exception only when the discharge is shown to be "'contrary to a fundamental and well-defined public policy as evidenced by existing law,'" and when the policy is "'evidenced by a constitutional or statutory provision.'" *Id.* at 731 (quoting *Brockmeyer v. Dun & Bradstreet*, 335 N.W.2d 834, 835 (Wis. 1983)). This "narrowly defined exception" requires that any cause of action contrary to the at-will doctrine must be "clearly defined and suitably controlled." *Id.* at 733.

After *Firestone*, the Kentucky Supreme Court adopted the additional caveat that "only two situations exist where 'grounds for discharging an employee are so contrary to public policy as to be actionable' absent 'explicit legislative statements prohibiting the discharge.'" *Grzyb*, 700 S.W.2d at 402 (quoting *Suchodolski v. Mich. Consol. Gas Co.*, 316 N.W.2d 710, 711 (Mich. 1982)). The first situation is "where the alleged reason for the discharge . . . was the failure or refusal to violate a law in the course of employment," and the second is "when the reason for a discharge was the employee's exercise of a right

conferred by a well-established legislative enactment." *Id.* (internal quotation marks and citation omitted).

Gadlage's strongest support for his claim derives from orders by two Kentucky circuit courts. In *Isaacs & Isaacs*, a lawyer alleged that he was fired in retaliation for threatening to contact the Kentucky Bar Association for an ethical opinion as to whether a questionable practice by his firm violated the Supreme Court Rules. The circuit court held that the lawyer's actions were sufficiently protected and that his discharge was sufficiently close in time to this threat, such that the lawyer alleged a *prima facie* case of wrongful discharge. Case No. 05-CI-7688, at 8. Similarly in *Greissman*, a different circuit court relied heavily on *Isaacs & Isaacs* to hold that the obligatory Supreme Court Rules "supply a source of authority that can ground a claim from wrongful termination in violation of public policy." Case No. 12-CI-00744, at 5.

We need not resolve here whether these two lower courts accurately anticipated how the Kentucky Supreme Court would rule on the question. Even if obligatory Supreme Court Rules can ground a public-policy exception to the at-will doctrine, Gadlage does not allege a single particularized Rule violation in his complaint or in his appellate briefing. He relies instead on vague and generalized statements about third-party conflicts of interests and obligations to clients. Gadlage has thus failed to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). We are not convinced that

the Kentucky Supreme Court would decide otherwise, considering "all available data." *See Combs*, 354 F.3d at 578; *Allstate Ins. Co.*, 249 F.3d at 454.

We also affirm the district court's dismissal of Gadlage's post-termination retaliation claim, because he did not establish a factual basis to support his claim that W&Y's conduct rose to the level of outrageousness necessary to meet his burden of establishing this claim. *See Kroger Co. v. Willgruber*, 920 S.W.2d 61, 65 (Ky. 1996). In regard to his motion to certify, we decline to "trouble" the Kentucky Supreme Court with this question of state law, because we have a "reasonably clear and principled course" to follow to resolve the matter. *Pennington v. State Farm Mut. Auto. Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009) (internal quotation marks and citation omitted).

Accordingly, the motion to certify is DENIED, and the district court's judgment is AFFIRMED.

**HELENE N. WHITE, Circuit Judge,** dissenting. I respectfully dissent. I would grant Gadlage's motion to certify to the Kentucky Supreme Court the question whether a violation of the Kentucky Supreme Court Rules can form the basis of a wrongful-termination claim as a public- policy exception to the employment-at-will doctrine.

Neither the Kentucky Supreme Court or its courts of appeals have addressed this question. However, two recent Kentucky circuit-court decisions squarely answered the question in the affirmative, *see Greissman v. Rawlings & Assoc.*, No. 12-CI-00744 (Oldham Cir. Ct. Apr. 8, 2013); *Isaacs & Isaacs, PSC v. Rigor*, No. 05-CI-7688 (Jefferson Cir. Ct. Oct. 18, 2010).

I do not agree that Gadlage's complaint fails to state a plausible claim. Accepting the allegations as true, as we must, Gadlage's complaint pleaded sufficient facts to raise a plausible inference of wrongdoing. *See 16630 Southfield Ltd. Partnership v. Flagstar Bank, F.S.B.*, __ F.3d__, No. 12-2620, 2013 WL 4081909, at *1 (6th Cir. Aug. 14, 2013) (noting that under *Iqbal* and *Twombly* a plaintiff is required "to plead enough 'factual matter' to raise a 'plausible' inference of wrongdoing").

The verified complaint alleged that Winters & Yonker "primarily represents individuals with personal injury claims sustained in motor vehicle accidents," that "associate attorneys['] job duties include traveling to the home of new clients, conducting a thorough interview of the client, and having the client sign various forms including a contract of representation," that Winters & Yonker "specifically instructs their associate attorneys to

use this 'sign up' process as an opportunity to get clients to seek medical care at Kentucky Spine and Rehab," which is owned and operated by Florida chiropractor Dr. Gary Kompothecras, that Kompothecras "advertises in Florida and Kentucky, not as a chiropractor, but as a 'medical and lawyer referral service' under the pseudonym '1(800) ASK-GARY" and that Kompothecras "refers hundreds of Kentucky injury patients to Winters & Yonker." Gadlage's complaint alleged that "[i]n return Kompothecras/1 (800) ASK-GARY expects hundreds of referrals from Winters & Yonker to his Kentucky medical clinics." Gadlage "found that it was more difficult to successfully resolve injury claims for individuals who treated at 1(800) ASK-GARY clinics, and therefore believed it was in the best interest of his clients and their claims to seek medical treatment with providers other than 1(800)ASK-GARY clinics." PID 5. Gadlage "**refused to engage in the quid-[pro-quo] referral arrangement mandated by Winters & Yonker and its agents**," and "believed that referring his clients to Kentucky Spine and Rehab **created a third party conflict of interest under the Kentucky's Supreme Court Rules.**" Gadlage alleged that shortly after he and other associates were shown a spreadsheet indicating that he was the associate who most often did not refer cases to Kentucky Spine & Rehab, his employment was terminated. His complaint alleged that "[a]s a result of his refusal to place Winters & Yonker and 1(800)ASK-GARY/Kentucky Spine and Rehab's **financial interest above the interests of his clients,**" his employment was terminated. PID 6.

Gadlage's counsel would have been well advised to cite specific Supreme Court Rule(s) in the complaint. But the Winters & Yonker firm was not baffled; its own motion to

dismiss identified a specific Supreme Court Rule: "it appears to be [Gadlage's] current claim that a referral to Kentucky Spine and Rehab might violate SCR 3.130(1.7)(a)." PID 29. The conclusion that Gadlage's complaint did not state a claim plausible on its face because it failed to cite *a specific Supreme Court Rule* is unfounded under these circumstances.

Finally, I note that during the pendency of this appeal this court affirmed another case Gadlage relied on below, *Martello v. Santana*, 874 F. Supp. 2d 658, 670 (E.D. Ky. 2012), *aff'd* 713 F.3d 309 (6th Cir. 2013), *rejecting* the argument that public policy can be created only by the Kentucky Legislature and not the Supreme Court of Kentucky:

> Martello argues that public policy can only be created by the Kentucky Legislature and not by the Supreme Court of Kentucky. However, Kentucky courts have held that, in the absence of legislative guidance, courts may determine public policy. *Yeager v. McLellan*, 177 S.W.3d 807, 809 (Ky. 2005) . . . .

> **The Kentucky bar is a mandatory unified bar and the Kentucky Rules of Professional Conduct are public policy set by the Kentucky Supreme Court**. *Ex parte Auditor of Pub. Accounts*, 609 S.W.2d 682, 689 (Ky. 1980). These attorney standards are not created only "for the private benefit of the legal community." *Id.* (noting the Kentucky Bar Association's mission is to maintain "a high standard of professional competence" and help promote improvement of the judicial system); *Kentucky Bar Ass'n v. Chesley*, 393 S.W.3d 584, 2011–SC–000382–KB, 2013 WL 1197510 (Ky. Mar. 21, 2013). The Kentucky Rules of Professional Conduct require lawyers to meet many ethical standards to ensure they properly represent their clients, the public. SCR 3.130 (preamble). Under Kentucky Rule of Professional Conduct 5.4 "[a] lawyer or law firm shall not share legal fees with a nonlawyer. . . ." *Id.* at 3.130–5.4 (professional independence). Here, Martello was not an attorney at any point during her work with Santana. She has a law degree, but has

never been admitted to any state's bar.  Thus, the fee-sharing contracts violate Rule 5.4.

*Martello*, 713 F.3d at 313–14 (emphasis added).

Two on-point Kentucky circuit-court decisions favor Gadlage's position as does *Martello*.  Our task is to "ascertain from all available data what the state law is and apply it." *General Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1125 (6th Cir. 1990).  I disagree with the majority that we have a reasonably clear and principled course to follow based on 25 to 30 year-old Kentucky Supreme Court decisions that do not address the question presented and would thus grant Gadlage's motion to certify the question.