RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 14a0115p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

JEREMY R. HOVEN,

*Plaintiff-Appellant,*

No. 13-1011

*v.*

WALGREEN CO.,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids
No. 1:11-cv-00881—Janet T. Neff, District Judge.

Argued:  November 19, 2013

Decided and Filed:  June 2, 2014

Before:  MOORE, GIBBONS, and SUTTON, Circuit Judges.

———————————

## COUNSEL

**ARGUED:**  Daniel D. Swanson, SOMMERS SCHWARTZ, P.C., Southfield, Michigan, for Appellant.   Adam S. Forman, MILLER, CANFIELD, PADDOCK AND STONE, P.L.C., Detroit, Michigan, for Appellee. **ON BRIEF:** Daniel D. Swanson, Jesse L. Young, SOMMERS SCHWARTZ, P.C., Southfield, Michigan, for Appellant.   Adam S. Forman, MILLER, CANFIELD, PADDOCK AND STONE, P.L.C., Detroit, Michigan, for Appellee.

1

—————————————

**OPINION**

—————————————

KAREN NELSON MOORE, Circuit Judge.   Plaintiff–appellant Jeremy Hoven is a former at-will employee of Walgreen Co. ("Walgreen").  He is also the holder of a Michigan license to carry a concealed weapon.  On May 8, 2011, gun-wielding robbers entered Walgreen while Hoven was working the overnight shift.  After one of the masked individuals pointed a gun at Hoven, Hoven drew his concealed weapon and fired it multiple times.  Eight days later, Hoven was terminated by Walgreen.

Hoven brought suit alleging that he was terminated in violation of public policy for exercising his rights of self-defense, defense of others, and to carry a concealed weapon.  The district court granted defendant–appellee Walgreen's motion for judgment on the pleadings. Because Hoven fails to identify a public-policy source that supports his claim, we **AFFIRM** the district court's grant of judgment on the pleadings to Walgreen.

**I. BACKGROUND**

**A. Facts**

Hoven has held a Michigan Registered Pharmacist License since 1999 and has worked as a full-time staff pharmacist with Walgreen since 2006.  R. 7-1 (Compl. at 2, ¶ 5, 7) (Page ID #19).  Hoven first experienced an armed robbery at work in 2007.  *Id.* at 3, ¶ 12 (Page ID #20). Concerned about his security at work, Hoven asked Walgreen to increase security systems, such as adding a panic-button device, but Walgreen did not comply with his requests; Hoven then elected to complete the training and certification program to obtain a permit to lawfully carry a concealed weapon.  *Id.* at 3–4, ¶ 13–15 (Page ID #20–21).  On November 21, 2008, Hoven was issued a Michigan Concealed Pistol License, and he then purchased a handgun, which he began bringing to work, concealed in his pocket.  *Id.* at 4, ¶ 15–16 (Page ID #21).  On May 8, 2011, while Hoven was working overnight at Walgreen, two masked individuals with guns entered the store.  *Id.* at ¶ 17–18.  Hoven tried to dial 911, but one of the masked gunmen jumped over the counter and pointed a gun at Hoven.  *Id.* at ¶ 19–20.  Hoven observed the individual's "finger

jerking on the gun's trigger"; Hoven backed away and fired his gun multiple times. *Id.* at ¶ 20–21. No one was shot or injured during this incident. *Id.* at 5, ¶ 23 (Page ID #22).

On May 11, 2011, two loss-prevention officers from Walgreen met with Hoven and obtained his statement about the incident. *Id.* at ¶ 26. On May 13, 2011, Hoven attended a second meeting with three Walgreen officials, who informed him that he had violated Walgreen's non-escalation policy and had the choice to resign or be terminated. *Id.* at 5–6, ¶ 28 (Page ID #22–23). Hoven stated that he would not resign. *Id.* He received an email on May 16, 2011, from Walgreen's employee Will Kennedy informing him that he had been terminated effective May 13, 2011. *Id.* at 6, ¶ 29 (Page ID #23).

**B. Procedure**

Hoven filed suit in Berrien County Circuit Court on June 17, 2011, alleging that Walgreen terminated him in violation of Michigan public policy for "lawfully exercising his right of self-defense, the defense of others, and to carry a concealed weapon." R. 7-1 (Compl. at 6, ¶ 33) (Page ID #23). He alleges that these public policies are expressed in the Second Amendment of the United States Constitution; Article I, § 6 of the Michigan Constitution; Michigan Criminal Jury Instructions 2d 7.15; Michigan Compiled Laws § 780.951; Michigan Compiled Laws § 780.971 *et seq.*; Michigan Compiled Laws § 750.227; and Michigan Compiled Laws § 28.421 *et seq.* Walgreen removed the case to the U.S. District Court for the Western District of Michigan on August 19, 2011. R. 1 (Notice of Removal) (Page ID #1–5). Hoven declined to certify to the Michigan Supreme Court the question of whether termination for carrying a concealed weapon and engaging in self-defense was in violation of public policy. R.32 (Mot. to Certify Question at 1–2) (Page ID #223–24).

Hoven filed a Motion for Leave to Amend Complaint on December 12, 2011, citing sections of the federal Occupational Safety and Health Act and the Michigan Occupational Safety and Health Act as additional bases of his public-policy claim. R. 35 (Mot. to Amend) (Page ID #251). Walgreen responded in opposition to the motion to amend. R. 37 (Opp'n to Mot. to Amend) (Page ID #273). Hoven filed a reply to Walgreen's motion that included three more counts: negligence; recklessness or willful and wanton conduct; and a challenge to the

constitutionality of a section of Michigan's Concealed Pistol Licensing Act that permits employers to prohibit employees from carrying concealed pistols at work. R. 40 (Reply to Opp'n to Mot. to Amend) (Page ID #338). Walgreen filed a sur-reply in opposition. R. 43 (Sur-Reply) (Page ID #360). The district court referred this matter to a magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A). 12/29/2011 Non-Documented Referral Order. The magistrate judge denied the motion because it was prejudicial to Walgreen. R. 45 (Mag. J. Order Denying Mot. to Amend at 1) (Page ID #373) (denying the motion for leave to amend complaint "[f]or reasons stated on the record at the hearing"); R. 47 (Motion Hearing Tr. at 15) (Page ID #390) (denying the motion because "I think that it is an attempted end-run around the pre-motion conference and the proposed motion to dismiss, and for that reason in the context of this case at this time, I find it prejudicial to the defendant"). Hoven did not appeal this decision to the district court.

On April 9, 2012, Walgreen moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). R. 51 (Mot. for J. on the Pleadings) (Page ID #400). Concluding that Hoven failed to state a claim for termination in violation of public policy, the district court granted Walgreen's motion for judgment on the pleadings. R. 61 (Op.) (Page ID #596); *Hoven v. Walgreen Co.*, No. 1:11-cv-881, 2012 WL 6025790, at *5–6 (W.D. Mich. Dec. 4, 2012).

## C. Jurisdiction

Walgreen removed this case to federal court pursuant to 28 U.S.C. § 1441. Hoven is a resident and citizen of Michigan and Walgreen is incorporated and has its principal place of business in Illinois; the amount in controversy exceeds $75,000. R. 1 (Notice of Removal at 2) (Page ID #2). This court has jurisdiction over the district court's grant of motion for judgment on the pleadings and dismissal of Hoven's complaint pursuant to 28 U.S.C. § 1291.

However, we do not have jurisdiction over Hoven's appeal of the magistrate judge's denial of his Motion for Leave to Amend the Complaint. Our jurisdiction to review the decisions of a magistrate judge turns on the grant of authority to the magistrate judge. When the district court grants a magistrate judge plenary jurisdiction pursuant to 28 U.S.C. § 636(c)(1), the magistrate judge may enter final judgments that are directly appealable to this court. *McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460, 471–72 (6th Cir. 2006). However, if the magistrate judge

is not granted plenary jurisdiction, but rather has only a limited grant of authority to consider pretrial matters  pursuant to 28 U.S.C. § 636(b)(1)(A), "we are 'without jurisdiction to review the magistrate's order unless the parties have sought review in the district court.'"  *McQueen*, 433 F.3d at 472 (quoting *Ambrose v. Welch*, 729 F.2d 1084, 1085 (6th Cir. 1984)).  In such a case we lack jurisdiction even when the magistrate judge's order is appealed along with a final order of the district court.  *Moon v. Harrison Piping Supply*, 465 F.3d 719, 725 (6th Cir. 2006).  Here, the district court referred the motion to amend to the magistrate judge with a limited grant of authority pursuant to 28 U.S.C. § 636(b)(1)(A).  12/29/2011 Non-Document Referral Order.  Hoven did not appeal to the district court the magistrate judge's denial of his motion to amend.  Accordingly, we lack jurisdiction to review the magistrate judge's order.

## II.  TERMINATION IN VIOLATION OF PUBLIC POLICY

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  We review the district court's decision on a motion for judgment on the pleadings de novo.  *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 511–12 (6th Cir. 2001).  "In reviewing the motion, we must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief."  *Id.* at 512.

Under the *Erie* doctrine, in diversity cases we apply the substantive law of the forum state and federal procedural law.  *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996).  Because the Michigan courts have not considered a claim for violation of public policy involving the rights asserted by Hoven, we must predict what the Michigan Supreme Court would do if presented with this situation.  *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 577 (6th Cir. 2004).

Michigan law presumes that employment relationships are terminable at-will, *Lytle v. Malady*, 579 N.W.2d 906, 910 (Mich. 1998), and Hoven does not dispute that he was an at-will employee.   At-will employment allows the employee or the employer to terminate the employment relationship "at any time for any, or no, reason," *Suchodolski v. Michigan Consol.*

*Gas Co.*, 316 N.W.2d 710, 711 (Mich. 1982) (per curiam).  However, Michigan recognizes a limit on the general rule of at-will employment:  the doctrine of termination in violation of public policy.  This doctrine recognizes that some reasons for terminating an employee are simply "so contrary to public policy as to be actionable."  *Id.*

In *Suchodolski*, the Michigan Supreme Court described three situations when Michigan courts have found that termination of an at-will employee violated public policy.  *Id.* at 711–12.  A termination violates public policy when:

> (1) the employee is discharged in violation of an explicit legislative statement prohibiting discharge of employees who act in accordance with a statutory right or duty; (2) the employee is discharged for the failure or refusal to violate the law in the course of employment; or (3) the employee is discharged for exercising a right conferred by a well-established legislative enactment.[1]

*McNeil v. Charlevoix Cnty.*, 772 N.W.2d 18, 24 (Mich. 2009).

In his complaint, Hoven identified seven sources of public policy that he asserts support his claim:  the Second Amendment of the United States Constitution; Article I, § 6 of the Michigan Constitution; Michigan Criminal Jury Instructions 2d 7.15; Michigan Compiled Laws § 780.951; Michigan Compiled Laws § 780.971 *et seq.*; Michigan Compiled Laws § 750.227; and Michigan Compiled Laws § 28.421 *et seq.*  Because none of these sources contain "an explicit legislative statement prohibiting discharge of employees who act in accordance with a

---

[1]Hoven argues that this is not an exhaustive list and that he need not fit his claim into one of the three scenarios.  Appellant Br. at 21–22. Although this list was described as "three examples" by the Michigan Supreme Court, *McNeil*, 772 N.W.2d at 24, the Michigan Supreme Court has never recognized a claim that does not fit into this framework.

In *Kimmelman v. Heather Downs Management Ltd.* the Michigan Court of Appeals noted that "[o]ur Supreme Court's enumeration of 'public policies' that might forbid termination of at-will employees was not phrased as if it was an exhaustive list." 753 N.W.2d 265, 268 (Mich. Ct. App. 2008).  Nonetheless, the court did not recognize a claim outside of this framework; instead, the court affirmed the denial of Kimmelman's claim because his discharge was explicitly prohibited by the Whistleblowers' Protection Act, which provided the exclusive remedy and so precluded the claim of termination in violation of public policy.  *Id.* at 268–70.  Hoven also points to *Austin v. Wayne State University*, an unpublished decision in which the Michigan Court of Appeals noted that "nothing in *Suchodolski* limits the exception to those three situations exclusively."  No. 220169, 2001 WL 732379, at *3 (Mich. Ct. App. June 12, 2001).  However, under Michigan Court Rule 7.215(C)(1), "[a]n unpublished opinion is not precedentially binding under the rule of stare decisis."

As a federal court sitting in diversity jurisdiction we are "'extremely cautious about adopting substantive innovation in state law.'" *Berrington v. Wal-Mart Stores, Inc.*, 696 F.3d 604, 608 (6th Cir. 2012) (quoting *Combs*, 354 F.3d at 578).  Consequently, we decline Hoven's invitation to create a new public-policy exception or to analyze his claim outside of the *Suchodolski* framework.

statutory right or duty," *McNeil*, 772 N.W.2d at 24, Hoven fails to plead a claim under the first *Suchodolski* scenario. He also fails to state a claim under the second scenario of *Suchodolski* because he pleaded that he was terminated for exercising his rights of self-defense, defense of others, and to carry a concealed weapon, R. 7-1 (Compl. at 6) (Page ID #23), not for "the failure or refusal to violate the law in the course of employment," *McNeil*, 772 N.W.2d at 24.

Thus, if Hoven's claim is to succeed, it must be under the third scenario of *Suchodolski* wherein "the employee is discharged for exercising a right conferred by a well-established legislative enactment." *McNeil*, 772 N.W.2d at 24. The district court granted Walgreen's motion for judgment on the pleadings because none of the seven public-policy sources that Hoven identified in his complaint provide confer a right on Hoven that was violated by his termination. We consider each of the public-policy sources in turn.

### 1. United States and Michigan Constitutions

Hoven identifies the Second Amendment of the United States Constitution and Article I, § 6 of the Michigan Constitution[2] as supporting his public-policy claim. However, under Michigan law, constitutional provisions may not be the source of a claim for termination in violation of public policy against a private employer. In *Prysak v. R.L. Polk Company*, 483 N.W.2d 629 (Mich. Ct. App. 1992), the Michigan Court of Appeals rejected a termination claim based on the free-speech protections in the United States and Michigan Constitution. Because the private defendant-employer "is not bound by the constitutional provisions guaranteeing freedom of speech," terminating an employee for engaging in free speech did not violate public policy. *Id.* at 634. Similarly, though the Second Amendment of the United States Constitution and Article I, § 6 of the Michigan Constitution limit some state interference with individuals' right to engage in self-defense and bear arms, they do not prevent interference with these rights by private actors. Therefore, the United States Constitution and the Michigan Constitution are not valid bases for Hoven's claim.

---

[2]"Every person has a right to keep and bear arms for the defense of himself and the state." Mich. Const. 1963, Art. 1, § 6.

### 2. Michigan Criminal Jury Instruction 7.15

Hoven identifies the model jury instruction for criminal cases involving the use of deadly force in self-defense as a public-policy statement on the right to engage in self-defense. Crim. Jury Instruction 2d 7.15. This argument is without merit. Under the third *Suchodolski* scenario, the public policy supporting the claim must be expressed in a "well-established legislative enactment." *McNeil*, 772 N.W.2d at 24. The model jury instructions are a product of the Michigan State Bar Standing Committee on Standard Criminal Jury Instructions, not a legislative body. Consequently, this instruction cannot form the basis of Hoven's public-policy claim.

### 3. Michigan Compiled Laws §§ 780.951 and 780.971 et seq.

Hoven's argument that § 780.951 and § 780.971 *et seq.* ("Michigan Self-Defense Act") support his claim is unpersuasive. The third *Suchodolski* scenario occurs when "the employee is discharged for exercising a right conferred by a well-established legislative enactment." *McNeil*, 772 N.W.2d at 24. Although these laws relate to self-defense, they do not "confer" a general right to engage in self-defense. Hoven does not allege that he was terminated for exercising the rights that are conferred by these statutes.

Section 780.951 provides that:

> Except as provided in subsection (2), it is a rebuttable presumption in a civil or criminal case that an individual who uses deadly force or force other than deadly force under section 2 of the self-defense act has an honest and reasonable belief that imminent death of, sexual assault of, or great bodily harm to himself or herself or another individual will occur . . .

Mich. Comp. Laws § 780.951(1). The statute proceeds to describe the conditions that must be met for the rebuttable presumption to apply and the conditions under which the presumption does not apply. Section 780.951 does not "confer" a general right to engage in self-defense, defense of others, or to carry a concealed weapon. If it confers any right at all, it is a right to receive the benefit of a rebuttable presumption in a civil or criminal case if one fits within the requirements of the statute. Hoven certainly does not claim that he was discharged for exercising his right to receive a rebuttable presumption in a legal case. Therefore, this statute does not provide a basis for his claim.

Similarly, the Self-Defense Act does not confer a right on the public to engage in self-defense. The right, if any, that is conferred is simply the right to present a defense in a criminal case, the elements of which a factfinder may or may not determine were satisfied. Mich. Comp. Laws § 780.971 *et seq.* Moreover, unlike § 780.951, this statute does not apply to both civil and criminal cases. The fact that the statute immunizes an individual who meets its requirements from criminal consequences but not civil liability demonstrates that it does not confer an unlimited right to engage in self-defense—it only provides a potential defense to criminal prosecution by the state. Just as the constitutional provisions that applied only against state action did not suffice as a basis for a public-policy claim against a private employer, *Prysak*, 483 N.W.2d at 633, neither does this law.

Rejection of the Self-Defense Act as a basis for a public-policy claim is confirmed by our decision in *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428 (6th Cir. 2012). After the passage of the Michigan Medical Marihuana Act (MMMA), plaintiff–appellant Casias obtained a state registry card and used marijuana to treat chronic pain and other symptoms. *Id.* at 431. He suffered an injury while working at Wal-Mart and, pursuant to the company policy, was required to undergo a drug test. Casias tested positive for marijuana, and although he explained that he did not come to work under the influence and had a state registry card, he was terminated from his position. *Id.* at 431–32. He brought a claim for termination in violation of public policy against Wal-Mart and pointed to the MMMA as the public policy.

The MMMA states that "[a] qualifying patient who has been issued and possesses a registry identification card shall not be subject to arrest, prosecution, or penalty in any manner, or denied any right or privilege . . . for the medical use of marihuana in accordance with this act . . . ." Mich. Comp. Laws § 333.26424(a). We concluded that the MMMA "does not impose restrictions on private employers, such as Wal-Mart" but rather protects against only state action. *Id.* at 435. Accordingly, we affirmed the district court's denial of Casias's public-policy claim. *Id.* at 436–37.

Section 780.951 and the Self-Defense Act are not as broad as Hoven suggests. These statutes provide only a "right" to a rebuttable presumption or to argue a defense to criminal

prosecution. Hoven does not allege that he was terminated for exercising these rights in a legal case. Accordingly, these laws do not provide a basis for his claim.

### 4. Michigan Compiled Laws § 750.227

Hoven's argument that § 750.227 supports his claim is without merit. This statute provides the penalty for carrying a concealed weapon in violation of the statute. Rather than providing a right to carry a concealed weapon, it does the opposite: it demonstrates that the right to carry a concealed weapon is limited and that one may be penalized for failure to comply with the regulation of and limitations on that right. Accordingly, this law does not provide a basis for Hoven's claim.

### 5. Michigan Compiled Laws § 28.421 et seq.

Finally, Hoven points to the complex regime for licensing concealed weapons in § 28.421 *et seq.* as support for his claim. He specifically identifies § 28.425n(2)(b) as the basis of his claim. This section provides:

> (2)Except as provided in subsection (3), an employer shall not prohibit an employee from doing either of the following:
>
> (a) Applying for or receiving a license to carry a concealed pistol under this act.
>
> (b) Carrying a concealed pistol in compliance with a license issued under this act. This subdivision does not prohibit an employer from prohibiting an employee from carrying a concealed pistol in the course of his or her employment with that employer.

Mich. Comp. Laws § 28.425n(2) ("§ 5n"). This section strikes a balance between the rights of employees to apply for and carry concealed weapons and the interests of employers in not having concealed weapons in the workplace. Section 5n expresses that the right to carry a concealed weapon in the course of employment may be limited. Therefore, it does not support Hoven's claim.[3]

---

[3]Whether Walgreen had a policy prohibiting employees from carrying concealed weapons in the course of employment is irrelevant. As an at-will employee, Hoven could be fired "at any time for any, or no, reason," *Suchodolski*, 316 N.W.2d at 711, unless that reason was in violation of public policy or other federal or state law.

Hoven argues that the balance seemingly struck by the statute does not defeat his claim because the portion of § 5n permitting employers to prohibit carrying concealed weapons in the course of employment is unconstitutional.[4]  He argues that the statute "improperly delegates authority to private employers to regulate, restrict and eliminate an individual's fundamental right to bear arms for self-defense and defense of others by denying the right of individuals with licensed concealed weapons to carry their weapon in the workplace for purposes of self-defense and personal protection . . ." Appellant Br. at 42–43.

We need not decide the constitutionality of § 5n.  Hoven's public-policy argument fails even if we make two assumptions in his favor:  (1) that § 5n's final sentence allowing employers to "prohibit[] an employee from carrying a concealed pistol in the course of his or her employment with that employer" is unconstitutional and (2) that § 5n's final sentence could be severed from the statute, leaving the rest of § 5n in place.  The statute would then read:  "[A]n employer shall not prohibit an employee from doing either of the following:  (a) Applying for or receiving a license to carry a concealed pistol under this act.  (b) Carrying a concealed pistol in compliance with a license issued under this act."  While Hoven's argument has shifted during the course of this case, he does not now claim that Walgreen fired him because he applied for a concealed pistol license, received a concealed pistol license, or carried a validly-licensed concealed pistol.  He claims Walgreen fired him because he acted in self-defense and fired at armed robbers in their store.  *See, e.g.*, Appellant Br. at 3 ("Walgreen fired Hoven for only one reason:  exercising his fundamental rights to self-defense and defense of others in the workplace.").  So this hypothetical version of § 5n would not provide a basis for his public-policy claim.  Perhaps Hoven believes that the right to carry a licensed concealed pistol without fear of employer retaliation would carry with it the right to use that pistol on an employer's premises in the name of self-defense without fear of employer retaliation.  As established above,

---

[4]Hoven's challenge to the constitutionality of § 5n arrives at this court in a rather unusual posture.  Hoven's initial complaint did not raise a constitutional challenge; in his reply brief after he moved to amend his complaint he attempted to add this claim.  The magistrate judge denied the motion for leave to amend, but in the hearing on the motion the magistrate judge noted that "it seems to me that you can make the constitutionality argument however you want to make it in connection with your public policy theory.  I don't see that as a stand-alone, a stand-alone theory."  R. 47 (Mot. to Amend Hr'g at 9–10) (Page ID #384–85).  In Hoven's response in opposition to Walgreen's motion for judgment on the pleadings, Hoven did argue that he raised a valid public-policy claim notwithstanding § 5n because the portion of that statute permitting employers to prohibit carrying concealed weapons in the course of employment was unconstitutional.  R. 54 (Opp. to Mot. for J. on the Pleadings at 18–22) (Page ID #453–57).

however, Hoven has not shown there is a legislatively enacted general right of self-defense in Michigan. Without such a right, Hoven's hypothetical reading of this hypothetical version of § 5n lacks merit.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's grant of judgment on the pleadings to Walgreen.